982 F.2d 1031
 24 Fed.R.Serv.3d 857, 16 Employee Benefits Cas. 1315
 LIBBEY-OWENS-FORD COMPANY, as Administrator of the Group
Health Insurance Plan,
Plaintiff-Appellant/Third-Party Defendant,
v.
BLUE CROSS AND BLUE SHIELD MUTUAL OF OHIO,
Defendant-Appellee/Third-Party Plaintiff,
Trinova Corporation, as Administrator of the Group Health
Insurance Plan, Third-Party Defendant-Appellee.
 No. 92-3129.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 16, 1992.
Decided Jan. 13, 1993.
Rehearing Denied Feb. 1, 1993.
Order on Motion for Rehearing En Banc
Feb. 23, 1993.
 
 Sue A. Sikkema (briefed), Thomas S. Zaremba (argued), Fuller & Henry, Toledo, OH, for plaintiff-appellant.
 John R. Climaco (argued), John A. Peca, Jr., Daina B. Van Dervort (briefed), Climaco, Climaco, Seminatore, Lefkowitz & Garofoli, Cleveland, OH, for defendant-appellee.
 Joseph P. Thacker, Cooper, Straub, Walinski & Cramer, Toledo, OH, Peter C. John, Phelan, Pope & John, Chicago, IL, for third-party defendant-appellee.
 Before: KENNEDY, MARTIN, and SUHRHEINRICH, Circuit Judges.
 BOYCE F. MARTIN, JR., Circuit Judge.
 
 
 1
 Libbey-Owens-Ford Co. has sought an accounting and restitution from Blue Cross and Blue Shield Mutual of Ohio under the Employment Retirement and Income Security Act, 29 U.S.C. § 1101 et seq., for rebates paid by others and for nursing home claims improperly paid by Blue Cross. Libbey-Owens-Ford appeals a pre-trial dismissal order that it had solicited. The dismissal with prejudice of the ERISA claims followed the district court's finding that Blue Cross owed no fiduciary duty under either state law or ERISA. We reverse. The grant of administrative control of an insurance plan creates a fiduciary duty, and the alleged breached duty should be determined by the district court.
 
 
 2
 The factual background begins with a November 21, 1968 Libbey-Owens-Ford Company agreement for providing health insurance by Blue Cross of Northwest Ohio. Under the terms of the agreement, Libbey-Owens-Ford would provide insurance coverage of health benefits to its eligible employees through Blue Cross. Libbey-Owens-Ford renewed the one-year contract annually until 1980. Between 1968 and 1980, Blue Cross administered claims for hospital care benefits under the group insurance policy that it also wrote. Throughout these years, Blue Cross had authority to decide all matters of coverage except to the extent that benefits were prescribed by Libbey-Owens-Ford's labor agreements with employees.
 
 
 3
 In 1980, Libbey-Owens-Ford negotiated a new contract with Blue Cross after deciding to self-insure the health needs of its employees. Under the amended agreement entered into on October 1, 1980, Libbey-Owens-Ford paid the costs of providing benefits under the plan directly to Blue Cross rather than by purchasing insurance from Blue Cross. Blue Cross continued to administer claims and decide matters of coverage, but it no longer insured the claims. Blue Cross provided monthly statements to Libbey-Owens-Ford of the amount paid to health-care providers and to other Blue Cross plans, as well as the amount of administrative charges that Libbey-Owens-Ford owed to Blue Cross. The amended agreement required Libbey-Owens-Ford to make a deposit with Blue Cross that represented approximately two months of claims and administrative fees calculated as a percentage of the claims paid. Blue Cross used the deposits, which totaled from $2.5 to $5 million between 1980 and 1987, to pay claims on behalf of the health-insurance plan.
 
 
 4
 After the agreement was amended, Blue Cross maintained authority to deal with claims processing and payments to hospitals. It prepared administrative manuals to govern the processing of claims. The manuals outlined the procedure for an appeal when Blue Cross denied a claim submitted by an employee of Libbey-Owens-Ford. Both the amended operating agreement and the administrative manuals describe Blue Cross' authority to grant or deny claims. These materials also demonstrate that Blue Cross retained authority to resolve all disputes regarding coverage. Article III of the amended Master Group Operating Agreement outlined Blue Cross' authority to address insurance disputes:
 
 
 5
 Any disputes which shall arise with respect to service on or with respect to benefits hereunder shall be submitted to, and resolved by, [Blue Cross] or Medical Indemnity, as the case may be, regardless of where the Enrollee shall reside. (Master Group Operating Agreement, Art. III)
 
 
 6
 The administrative manual issued in 1985 described the appeal procedure as follows:
 
 
 7
 An employee or dependent may appeal if he/she is dissatisfied with a decision made by Blue Cross and Blue Shield ... regarding a provision in this document. For example, if Blue Cross and Blue Shield rejects a claim, the employee or dependent may appeal by filing a written request for reconsideration. The written request must be submitted within 90 days after the employee or dependent has been notified of the plan's decision. The Blue Cross and Blue Shield Plan will conduct a thorough review and notify the employee or dependent of their decision. (1985 Manual at p. 7.01)
 
 
 8
 Regarding the issue of payments, Blue Cross received a discount from most Toledo area hospitals. Blue Cross generally paid hospitals at a rate of 97% of billed charges. It also audited hospital bills annually in order to determine whether any charges could be eliminated. If the revised hospital bills were less than the amounts paid by Blue Cross during the year, Blue Cross received refunds or rebates from the hospitals. Blue Cross did not credit the Libbey-Owens-Ford health insurance plan for the proceeds of these settlement audits.
 
 
 9
 In 1986, Libbey-Owens-Ford Company transferred its glass division to a wholly-owned subsidiary, LOF Glass Inc., and sold the subsidiary to Pilkington Holdings, Inc. After the sale, LOF Glass Inc. changed its name to Libbey-Owens-Ford Co. The former Libbey-Owens-Ford Company changed its name to Trinova. Also in 1986, Blue Cross of Northwest Ohio became Blue Cross and Blue Shield Mutual of Ohio.
 
 
 10
 On May 21, 1990, Libbey-Owens-Ford filed an ERISA-based complaint in the district court in its capacity as administrator and named fiduciary of the Group Health Insurance Plan for Libbey-Owens-Ford employees. On June 12, 1990, Libbey-Owens-Ford filed an amended complaint that included seven claims. First, it made an ERISA claim for an accounting of rebates received by Blue Cross. The second claim was for declaratory judgment that Blue Cross' conduct regarding the rebates was a breach of fiduciary duty under ERISA and that restitution was due. Third, Libbey-Owens-Ford made a tort claim for conversion regarding the rebates. Fourth, Libbey-Owens-Ford claimed that Blue Cross failed to provide claims information pursuant to ERISA. Fifth, Libbey-Owens-Ford sought an accounting, declaratory judgment, and restitution under ERISA for improperly paid nursing-home claims. The sixth claim was for an accounting and damages for breach of common law fiduciary duties regarding rebates, nursing-home claims, and refusal to provide information. Seventh, Libbey-Owens-Ford made a claim for breach of contract respecting rebates, improperly paid nursing-home claims, and refusal to provide information.
 
 
 11
 After unsuccessfully moving to dismiss the amended complaint for failure to join indispensable parties, Blue Cross filed its answer, a counterclaim, and a third-party complaint. The third-party complaint joined Trinova Corporation, which was Libbey-Owens-Ford's predecessor and had been the administrator of the Plan until April, 1986. The third-party complaint also joined Libbey-Owens-Ford Co. as the employer and sponsor of the Plan. The counterclaim sought contribution and indemnity against the plaintiff, and the third-party complaint sought relief from Trinova Corporation and Libbey-Owens-Ford Co.
 
 
 12
 On April 8, 1991, Libbey-Owens-Ford moved for voluntary partial summary judgment to determine whether Blue Cross was a fiduciary under ERISA and whether Libbey-Owens-Ford was entitled to an accounting upon demand. The district court denied this motion on July 30, 1991. Subsequently, Libbey-Owens-Ford moved for voluntary dismissal of its case without prejudice in accordance with Fed.R.Civ.P. 41(a)(2).
 
 
 13
 On November 25, 1991, the district court issued an opinion that set forth the conditions for dismissal and allowed Libbey-Owens-Ford the option of withdrawing its motion for partial summary judgment and proceeding with the case. In the opinion, the district court held that Blue Cross was not a fiduciary and did not have to provide an accounting to Libbey-Owens-Ford. Based upon this determination, the court ordered dismissal with prejudice of the claim for breach of common law fiduciary duties and the ERISA claims. Nonetheless, Libbey-Owens-Ford did not withdraw its motion to dismiss, and it proceeded on the merits of the case. Consequently, on January 2, 1992, the district court entered a final judgment order that dismissed with prejudice Libbey-Owens-Ford's first, second, and sixth claims for relief and eliminated all references to ERISA in the remaining claims. The district court dismissed the third, fourth, fifth, and seventh claims without prejudice pursuant to Fed.R.Civ.P. 41(a). On January 31, 1992, Libbey-Owens-Ford filed a notice of appeal.
 
 
 14
 We have jurisdiction over this case. As a general rule, neither party may appeal from a voluntary dismissal because it is not an involuntary adverse judgment. Laczay v. Ross Adhesives, 855 F.2d 351, 351 (6th Cir.1988), cert. denied, 489 U.S. 1014, 109 S.Ct. 1125, 103 L.Ed.2d 188 (1989). However, in this circuit, this "rule is ironclad only with respect to dismissal without prejudice." Id. at 354. An exception arises when the dismissal is with prejudice and "designed only to expedite review of an order which had in effect dismissed appellant's complaint." Raceway Properties, Inc. v. Emprise Corp., 613 F.2d 656, 657 (6th Cir.1980). A limit on the appellant's procedural options is necessary to prevent piecemeal appeals. When a party chooses to appeal the claims dismissed with prejudice, the party is unable to proceed in the district court with the claims that were dismissed without prejudice.
 
 
 15
 The "expedite review" exception applies to this case. The district court's decision to deny Libbey-Owens-Ford's motion for partial summary judgment had the effect of terminating Libbey-Owens-Ford's principal cause of action. Libbey-Owens-Ford's motion to dismiss must be read in light of the earlier summary judgment decision that Blue Cross was not a fiduciary under ERISA or at common law. The district court ordered dismissal with prejudice of the claim for breach of common law fiduciary duties and the ERISA claims. Consequently, Libbey-Owens-Ford fell within the exception.
 
 
 16
 Our standard of review in this case is de novo because the district court's conclusion that an administrator of a self-insured benefits plan is not an ERISA fiduciary is a conclusion of law. See Waxman v. Luna, 881 F.2d 237, 240 (6th Cir.1989) (holding that when the trial court applies statutory law to the facts, the holding becomes a conclusion of law reversible under the de novo standard.)
 
 
 17
 We first address the question of whether ERISA is applicable to the instant case. ERISA applies to all employee benefit plans created by an employer engaged in interstate commerce or any industry affecting interstate commerce. 29 U.S.C. § 1003(a)(1). Employee benefit plans include both employee welfare benefits plans and employee pension benefit plans. Libbey-Owens-Ford contends that this case involves an employee welfare benefit plan. Pursuant to the statute, ERISA welfare benefits plans include:
 
 
 18
 [A]ny plan, fund, or program, which ... is ... established for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death, or unemployment....
 
 
 19
 29 U.S.C. § 1002(1) (1991).
 
 
 20
 Employers may establish ERISA plans very easily. International Resources, Inc. v. New York Life Insurance Company, 950 F.2d 294, 297 (6th Cir.1991). As defined under ERISA, employee welfare benefit plans may be created through the mere purchase of a group health insurance policy when the owner does not retain control, administrative power, or responsibility for benefits. Id.
 
 
 21
 Under the International Resources analysis, Libbey-Owens-Ford established an ERISA plan by contracting with Blue Cross to provide health insurance to Libbey-Owens-Ford employees. The company obtained coverage for its employees but did not retain control of the administration of the insurance. Blue Cross submitted a monthly statement to Libbey-Owens-Ford based on payments made by Blue Cross. In making monthly allocations to the plan, Libbey-Owens-Ford merely paid the insurance claims. Therefore, the plan comes within the provisions of ERISA.
 
 
 22
 After determining that ERISA applies, we focus on whether a fiduciary duty under ERISA is present as well. ERISA includes in its definition of a fiduciary a party with "any discretionary authority or discretionary responsibility in the administration of such [an employee benefit] plan." 29 U.S.C. § 1002(21)(A)(iii). Although the court in International Resources determined that ERISA applies to administrators in self-insured situations, this court has not heretofore addressed the narrow question of whether administration of an employee benefit plan creates a fiduciary duty under ERISA.
 
 
 23
 Other courts have ruled that an administrator of a self-insured employee benefit plan is a fiduciary for ERISA purposes. The Seventh Circuit has made such a determination. Reilly v. Blue Cross and Blue Shield United of Wisconsin, 846 F.2d 416, 419 (7th Cir.1988). Although Reilly contained a dissent, the difference between the majority and dissenting opinions in Reilly did not concern whether ERISA imposes a fiduciary duty. Rather, the dissent addressed the factual issue of whether Blue Cross' decision to deny benefits under the plan was arbitrary or capricious. Id. at 426-27 (Posner, J., dissenting). Both the majority and the dissent conclude that a fiduciary duty under ERISA applied, but only the majority concludes that there was a breach of the fiduciary duty. Id. at 419-27. Although Reilly involved an individual claim and this case involves an accounting on behalf of the entire benefit plan, that factual distinction does not affect the question of whether an administrator of an ERISA plan is a fiduciary.
 
 
 24
 Several district courts have also imposed a fiduciary duty under a similar analysis. See Blue Cross and Blue Shield of Alabama v. Peacock's Apothecary, Inc., 567 F.Supp. 1258, 1268 (N.D.Ala.1983) (insurer was a fiduciary where it had the authority under the plan to review and make decisions regarding claim denials); Sixty-Five Security Plan v. Blue Cross and Blue Shield of Greater New York, 583 F.Supp. 380, 387 (S.D.N.Y.1984) (claims administration rendered Blue Cross an ERISA fiduciary); and Eversole v. Metropolitan Life Insurance Co., 500 F.Supp. 1162, 1164-65 (C.D.Cal.1980) (authority to grant or deny claims is requisite discretionary authority to qualify as ERISA fiduciary).
 
 
 25
 Our main concern in order to determine the presence of a fiduciary duty is whether the insurance company has discretionary authority. The result is the same whether the insurance company is the carrier administering claims under an insurance policy or whether the insurance company is administering claims for a fee under a self-insured plan. The insurance company may have discretionary authority in both cases. When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA "fiduciary" under 29 U.S.C. § 1002(21)(A)(iii). In this case, Blue Cross had discretionary authority regarding claims; therefore, it owed Libbey-Owens-Ford a fiduciary duty.
 
 
 26
 Finally, we are called upon to determine whether Blue Cross is obligated, as a fiduciary, to provide an accounting on demand. In order to evaluate the nature of the fiduciary duty under ERISA, we begin with the language of the 29 U.S.C. § 1104. ERISA embraces a duty of loyalty to the trust beneficiaries, 29 U.S.C. § 1104(a)(1)(A), and the prudent man standard of care, 29 U.S.C. § 1104(a)(1)(B). Fiduciaries must act "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).
 
 
 27
 Libbey-Owens-Ford did not bring any of the provisions of 29 U.S.C. § 1104 directly into issue or claim a breach of fiduciary duty based on the terms of the agreement. The Master Group Operating Agreement constitutes one of the "documents or instruments governing the plan" within the meaning of 29 U.S.C. § 1104(a)(1)(D). However, the record does not indicate that any provision in the plan addressed the need for an accounting. The plan was silent on the right to an audit.
 
 
 28
 Instead of arguing that Blue Cross has a fiduciary obligation to provide an accounting because of 29 U.S.C. § 1104 or the operating agreement, Libbey-Owens-Ford asserts that Blue Cross has violated some of the general principles of trust law as incorporated into ERISA. Principles of trust law do apply to ERISA. E.g., Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447, reh. denied, 473 U.S. 926, 106 S.Ct. 17, 87 L.Ed.2d 696 (1985) (Congress intended that the common law of trusts to define the general scope of fiduciary responsibility). Libbey-Owens-Ford claims that it is entitled to an accounting as a result of this incorporation.
 
 
 29
 Libbey-Owens-Ford's reliance on trust principles is well-founded. A fiduciary must furnish financial information to its principal upon demand. Restatement (Second) of Trusts §§ 172-73 (1959). A trustee has a duty to account to beneficiaries of the trust and may be compelled to render financial data upon failure to provide such information. Restatement (Second) of Trusts § 172 comment c (1959).
 
 
 30
 In denying Libbey-Owens-Ford's motion for partial summary judgment, the district court improperly concluded that, because the plan has no assets, there are no funds for which Blue Cross would be obligated to account. However, a fiduciary duty is present because Blue Cross could earmark the funds that Libbey-Owens-Ford allocated to the plan. Moreover, the amounts on deposit were substantial. Libbey-Owens-Ford deposited $2.5 to $5 million with Blue Cross between 1980 and 1987. The fiduciary duty under ERISA includes providing financial records that should have been maintained by an ERISA fiduciary upholding the prudent man standard of care. Libbey-Owens-Ford is entitled to review a reasonable number of Blue Cross' financial records for the plan within reasonable time limits.
 
 
 31
 On the basis of the preceding analysis, we reverse. We hold that Libbey-Owens-Ford is a participant in an ERISA plan and that Blue Cross is an ERISA fiduciary. Blue Cross, as an ERISA fiduciary, had a duty to account on demand to the participants in the plan for its conduct. Consequently, Libbey-Owens-Ford can assert a claim for an accounting.
 
 ORDER
 
 32
 Feb. 23, 1993.
 
 
 33
 The opinion in this case was filed on January 13, 1993. Counsel for Blue Cross and Blue Shield Mutual of Ohio moved for a rehearing en banc on February 8, 1993. A previous motion for rehearing by the panel was denied on February 1, 1993. Rule 40(a) of the Federal Rules of Appellate Procedure provides a fourteen-day period from the date of the decision of the Court of Appeals during which a motion to reconsider or a motion for a rehearing en banc must be filed. Failure to file a request for a rehearing, by the panel or by the court en banc, within that period makes review of the decision impossible without prior leave of court. The fourteen-day period for requesting en banc consideration may not be extended by filing a timely request for a panel rehearing, even if the first request is filed within the fourteen-day period.
 
 
 34
 Because the motion was filed in this case after the fourteen-day period, this court is divested of further appellate jurisdiction and the mandate of the court should issue immediately.