Virginia MADONIA, Plaintiff–Appellant,

v.

BLUE CROSS & BLUE SHIELD OF VIRGINIA, Defendant–Appellee.

No. 93–1057.

United States Court of Appeals, Fourth Circuit.

Argued Sept. 29, 1993.

Decided Nov. 24, 1993.

---

James Warren Haskins, Young, Haskins, Mann & Gregory, P.C., Martinsville, VA, argued (G. Carter Greer, on brief), for plaintiff-appellant.

James P. McElligott, Jr., McGuire, Woods, Battle & Boothe, Richmond, VA, argued (Gilbert E. Schill, Jr., Catherine Currin Hammond, David F. Dabbs, McGuire, Woods, Battle & Boothe, Jeanette D. Rogers, Blue Cross and Blue Shield of Virginia, on brief), for defendant-appellee.

Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.

## OPINION

WILKINSON, Circuit Judge:

The question before us is whether a closely held corporation that subsidized health insurance policies for several of its employees has established an "employee welfare benefit plan" under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.* Here we find that it has. In addition, we hold that a sole shareholder employed by the corporation and insured under the health policy provided by the corporation is a "participant" in the company's ERISA plan. Accordingly, we affirm the judgment of the district court.

I.

In 1981, Dr. Eugene Madonia founded Martinsville Neurological Associates, Inc. ("MNA"), a Virginia corporation. Since MNA's founding, Dr. Madonia has served as its director, president, and sole shareholder. In addition to Dr. Madonia, MNA has four other full-time employees: Teresa Anglin, Cynthia Deal, Sheila Martin, and Teresa Smith. Dr. Madonia is the only physician employed by MNA.

On November 7, 1988, Dr. Madonia applied for health insurance under the "Virginia Physicians and Their Staffs" group plan offered by Blue Cross & Blue Shield of Virginia ("BC/BS"). BC/BS issued a group policy naming Dr. Madonia as the policy holder and listing his family members as the beneficiaries. Since that time, MNA has paid all premiums for the Madonias' health insurance and deducted the payments on its corporate tax returns as employee fringe benefits.

MNA's purchase of the "Virginia Physicians and Their Staffs" policy for Dr. Madonia made the remaining MNA employees eligible for coverage under the same group plan by virtue of their employment affiliation with Dr. Madonia. Sheila Martin took advantage of this opportunity by applying for the BC/BS group plan on November 8, 1988.

BC/BS accepted her application and provided coverage until November 1991, when Ms. Martin voluntarily discontinued the policy. During that time, MNA made direct payments to BC/BS for Ms. Martin's monthly premiums. The premiums varied in amount but reached $136.89 in 1991. MNA deducted $50.00 from Ms. Martin's monthly paycheck for partial reimbursement.

In August 1992, Teresa Anglin, another MNA employee, obtained a health insurance policy from another company, Virginia Farm Bureau. MNA gave Ms. Anglin an interest-free loan for her first monthly premium and increased her salary so that she could afford subsequent monthly premiums. MNA did not pay for or contribute to the other two employees' health insurance policies.

In 1984, plaintiff-appellant Virginia Madonia, Dr. Madonia's wife, was diagnosed with breast cancer. When the cancer recurred in March 1992, Mrs. Madonia's physician recommended high dose chemotherapy with an autologous bone marrow transplant ("HDCT–ABMT"). In May 1992, BC/BS informed Mrs. Madonia that HDCT–ABMT was an "experimental" treatment not covered under her policy. Mrs. Madonia sued BC/BS in state court for breach of contract, bad faith breach of contract, intentional infliction of emotional distress, and unfair trade practices. BC/BS removed the case to federal district court on the ground that Madonia's suit was governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. In response, Mrs. Madonia filed a motion to remand.

The district court denied Madonia's motion for remand. The court found that MNA had established an ERISA "employee welfare benefit plan" by paying for and contributing to three of its employees' health insurance plans. The court further found that Mrs. Madonia had standing to sue under ERISA as a plan "beneficiary" because Dr. Madonia was an "employee" of MNA and thus a "participant" in MNA's ERISA plan. Based on these two findings, the court held that remand would be improper because Madonia's state claims were pre-empted by ERISA under 29 U.S.C. § 1144(a).

This interlocutory appeal followed. *See* 28 U.S.C. § 1292(b).

## II.

ERISA preempts all state claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). In order for Madonia's state law claims to be preempted by ERISA, two criteria must be met: first, an "employee benefit plan" must exist; second, Madonia must have standing to sue as a "participant" or "beneficiary" of that employee benefit plan. We address each criterion in turn.

## A.

Madonia contends that her state law claims are not preempted by ERISA because an "employee benefit plan" did not exist. Our inquiry into the existence of an "employee benefit plan" must begin, as always, with the language of the statute. ERISA defines "employee benefit plan" as either an "employee pension benefit plan" or an "employee welfare benefit plan." 29 U.S.C. § 1002(3). ERISA further defines "employee welfare benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness....

29 U.S.C. § 1002(1). This statutory definition can be broken down into five elements: "(1) a 'plan, fund, or program' (2) established or maintained (3) by an employer ... (4) for the purpose of providing medical, surgical, hospital care, [or] sickness ... benefits (5) to participants or their beneficiaries." *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir.1982) (en banc).

Madonia argues that the second and fifth elements of the above definition have not been met. We think, however, that the evidence shows that MNA established a plan to help its employees obtain health insurance. In our view, this plan meets all five prongs of the *Donovan* test and therefore constitutes an ERISA "employee welfare benefit plan."

We note as a threshold matter that a "plan, fund, or program" is in existence. *See* 29 U.S.C. § 1002(1). MNA's plan can be defined as a program to assist MNA employees in obtaining and financing health insurance from insurance carriers of their choice. The fact that MNA's plan respects an employee's choice of carrier does not render the plan too ill-defined under ERISA. To the contrary, the parameters of MNA's plan are readily ascertainable: the intended benefit is health insurance coverage; the beneficiaries include MNA's employees who seek help with their health insurance payments; the source of financing is MNA and its employees; and the procedure for receiving benefits is submission of claims to the employees' own insurance companies. We therefore conclude that a sufficiently defined "plan" exists. *See Donovan*, 688 F.2d at 1373 (holding that an ERISA "plan" exists "if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits").

Madonia asserts, however, that even if a "plan" exists, MNA's actions are insufficient to satisfy the second prong of the *Donovan* test—establishment or maintenance of the plan. She claims that MNA did no more than purchase insurance for Dr. Madonia, and that, under *Taggart Corp. v. Life & Health Benefits Admin., Inc.*, 617 F.2d 1208 (5th Cir.1980), the bare purchase of health insurance in and of itself does not constitute the "establishment" of an ERISA plan. *See id.* at 1211. The flaw in Madonia's argument is that "[t]he ERISA definition of 'employee welfare benefit plan' specifically allows that ERISA plans may be established 'through the purchase of insurance or otherwise.' 29 U.S.C. § 1002(1)." *International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 297 (6th Cir.1991); *see also Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 240 (5th Cir.1990). Under this statutory definition, employers may easily establish ERISA plans by purchasing insurance for their employees. *See Libbey–Owens–Ford v. Blue Cross & Blue Shield Mutual of Ohio*, 982 F.2d 1031, 1034 (6th Cir.1993); *see also Fugarino v. Hartford Life & Accident Ins. Co.*, 969 F.2d 178, 184 (6th Cir.1992) (stating that "the bare purchase of insurance ... may

be evidence of the existence of an ERISA plan"); *Brundage–Peterson v. Compcare Health Servs. Ins. Corp.*, 877 F.2d 509, 511 (7th Cir.1989) (noting that a "barebones plan" under which the employer merely arranges and pays for insurance plans invokes ERISA protection); *Credit Managers Assoc. v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir.1987) (same).

In recognition of this statutory language, the Fifth and Eleventh Circuits have retreated from *Taggart* and, instead, adopted the well-established rule that "payment of premiums on behalf of ... employees is 'substantial evidence that a plan, fund or program (was) established.'" *Kidder v. H & B Marine, Inc.*, 932 F.2d 347, 353 (5th Cir.1991) (quoting *Donovan*, 688 F.2d at 1373). Under that standard, MNA's actions are more than sufficient to show the "establishment" of a plan. MNA paid all of Dr. Madonia's premiums. MNA also made direct payments to BC/BS for Ms. Martin's premiums and then deducted only one-third of the insurance cost from Ms. Martin's pay. In addition, MNA provided Ms. Anglin with an interest-free loan and a salary increase so that she could pay her health insurance premiums. This arrangement not only required MNA to spend its corporate funds on employee insurance, but also involved additional administrative tasks: adjusting salaries, making payroll deductions, and taking corporate tax deductions to reflect these employee fringe benefits. Other circuits facing similar facts have found the "establishment or maintenance" of an ERISA plan. *See, e.g., Memorial Hosp.*, 904 F.2d at 241 (finding that an employer "established" a plan by paying insurance premiums for its employees and then seeking reimbursement through payroll deductions). MNA's actions here are well within the ambit of such holdings.

Madonia's final contention is that the last prong of the *Donovan* test—the existence of a plan "participant"—has not been met. ERISA defines "participant" as

> any employee or former employee of an employer ... who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer ... or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). Department of Labor regulations further provide that the plan must involve at least one employee other than the corporation's sole owner to satisfy the "participant" requirement. *See* 29 C.F.R. §§ 2510.3–3(b) & 2510.3–3(c)(1). Madonia claims that MNA's plan was not an "employee welfare benefit plan" because no MNA employee met the statutory and regulatory definitions of "participant" at the time of removal.

We disagree. It is true that Dr. Madonia cannot be considered a "participant" for purposes of determining the existence of an employee benefit plan. *See* 29 C.F.R. § 2510.3–3(c)(1). However, MNA's plan benefitted employees other than Dr. Madonia. Ms. Martin is the most obvious example. MNA paid two-thirds of her health insurance premiums for three years. Even though she voluntarily terminated her BC/BS coverage in 1991, she remained eligible to renew her insurance coverage by virtue of her employment at MNA. Ms. Anglin is also obviously a "participant" in MNA's plan. MNA helped her finance health insurance payments through an interest-free loan and a salary raise. The other two employees—Ms. Deal and Ms. Smith—benefitted from MNA's plan as well. They both became eligible for coverage under BC/BS's "Virginia Physicians and Their Staffs" group plan as a result of MNA's purchase of a group policy for Dr. Madonia. Each of MNA's four staff employees "is or may become eligible to receive a benefit of any type from an employee benefit plan." *See* 29 U.S.C. § 1002(7). Therefore, they have been and remain "participants" in MNA's plan.

In enacting ERISA, Congress designed a comprehensive system of regulating employee benefit plans in order "to provide the maximum degree of protection to working men and women" whose employers provide benefits. S.Rep. No. 127, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4838, 4854. In this case, a corporation set about subsidizing and financing the purchase of health insurance for its employees: it invested corporate funds, time, and effort in establishing the program, and it received benefits in the form of tax deductions for those efforts. This certainly is an ERISA employee welfare benefit plan. To say otherwise would deprive MNA employees of the protections ERISA plainly provides,[1] and would thereby place a restrictive gloss on what Congress intended to be a comprehensive statute.

### B.

Madonia contends that even if MNA established an ERISA plan, her state claims are not preempted because she does not have standing to sue under ERISA. ERISA confers standing upon "participants" and "beneficiaries" of an ERISA plan. *See* 29 U.S.C. § 1132(a)(1). In order for Mrs. Madonia to have standing as a "beneficiary," Dr. Madonia must have been a "participant" in MNA's employee welfare benefit plan. *See* 29 U.S.C. § 1002(8). ERISA's definition of "participant" in turn requires that Dr. Madonia be an "employee" of MNA. *See* 29 U.S.C. § 1002(7). Madonia argues that Dr. Madonia is not an "employee" of MNA, and thus could not have been a plan "participant."

We disagree. Dr. Madonia qualifies as MNA's "employee" under ERISA's definition of that term and the Supreme Court's interpretation of that definition. ERISA defines "employee" as "any individual employed by an employer." 29 U.S.C. § 1002(6). Dr. Madonia plainly falls within this broad definition: he is an "individual," and he admits that he is "employed by" MNA. This does not end our analysis, however. The Supreme Court recently declared that this statutory definition is "completely circular and explains nothing," and therefore adopted "a common-law [agency] test for determining who qualifies as an 'employee' under ERISA...." *Nationwide Mutual Ins. Co. v. Darden,* —— U.S. ——, ——, 112 S.Ct. 1344, 1348, 117

---

**1.** *See* 29 U.S.C. § 1001(b) ("It is hereby declared to be the policy of [ERISA] to protect ... the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.").

L.Ed.2d 581 (1992). The Court has directed that we consider factors such as the "duration of the relationship between the parties[,] ... the method of payment[,] ... and the tax treatment of the hired party" in determining "employee" status. *See id.* Dr. Madonia meets every common law criterion for being MNA's "employee": he draws a salary from MNA; MNA's tax forms list Dr. Madonia as its employee; and Dr. Madonia himself listed MNA as his "employer" on the BC/BS group plan application. Plainly, Dr. Madonia is MNA's "employee" under the *Darden* test.

Madonia challenges this conclusion on the ground that Dr. Madonia's status as MNA's sole shareholder bars him from being MNA's "employee." Her challenge is twofold. First, she relies on *Kwatcher v. Massachusetts Serv. Employees Pension Fund,* 879 F.2d 957 (1st Cir.1989), which held that sole shareholders do not fall within the statutory definition of "employee" because (1) sole shareholders function as "employers" for purposes of ERISA, and (2) a person cannot simultaneously be both an "employer" and an "employee." *See id.* at 959–60. In construing the ERISA definitions of "employer" and "employee," the *Kwatcher* court specifically rejected the "common law principles" approach to the statutory definition of employee. *See id.* at 960. *Kwatcher,* however, cannot be squared with the Supreme Court's subsequent holding in *Darden.* In *Darden,* as we have noted, the Supreme Court explicitly directed lower courts to use common law principles in defining these statutory terms. *Darden,* —— U.S. at ——, 112 S.Ct. at 1349. To discern common law principles applicable here, we must look to Virginia law. Virginia courts have "long recognized the basic proposition that a corporation is a legal entity separate and distinct from its shareholders." *Perpetual Real Estate Servs., Inc. v. Michaelson Properties, Inc.,* 974 F.2d 545, 547–48 (4th Cir.1992). Virginia law permits disregard of the corporate form only in "extraordinary" circumstances warranting corporate veil-piercing. *See id.* at 548. Respect

for this principle compels us to recognize MNA's corporate identity as the "employer" and Dr. Madonia's separate identity as MNA's "employee." *See International Bhd. of Painters and Allied Trades Union v. George A. Kracher, Inc.,* 856 F.2d 1546, 1547–50 (D.C.Cir.1988) (focusing on limited liability principles to hold that the CEO and principal shareholder of a corporation is not "an employer" for ERISA purposes).[2]

Second, Madonia points to a DOL regulation dealing with the existence of an "employee benefit plan," which provides:

> *For purposes of this section:* (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

29 C.F.R. § 2510.3–3(c) (emphasis added). Madonia contends that this regulation governs the definition of "employee" throughout ERISA and thereby precludes Dr. Madonia from being deemed an "employee" or a plan "participant."

Madonia, however, overlooks the introductory clause of the regulation: "[f]or purposes of this section." "[T]his section" refers to 29 C.F.R. § 2510.3–3, which deals exclusively with the determination of the existence of an "employee benefit plan." Therefore, by its very terms, the regulation's exclusion of sole business owners from the definition of "employee" is "limited to its self-proclaimed purpose of clarifying when a plan is covered by ERISA and does not modify the statutory definition of employee for all purposes." *Dodd v. John Hancock Mutual Life Ins. Co.,* 688 F.Supp. 564, 571 (E.D.Cal.1988). The cases on which Madonia relies simply fail to address the import of the introductory language to this regulation. *See Kwatcher,* 879 F.2d at 960–62; *Peckham v. Board of Trustees of the Int'l Bhd. of Painters and Allied Trades Union,* 653 F.2d 424, 427 (10th Cir. 1981). Specifically, the regulation does not

2. Madonia points to three other cases for the proposition that sole business owners are "employers" and cannot simultaneously be considered "employees"—*Meredith v. Time Ins. Co.,* 980 F.2d 352, 356–57 (5th Cir.1993); *Fugarino,* 969 F.2d at 186; and *Giardono v. Jones,* 867 F.2d 409, 411–12 (7th Cir.1989). All three cases are different from the present case in that they involved sole proprietors of unincorporated businesses which, by definition, have no separate legal identity. By contrast, this case deals with a sole shareholder of a corporation that has a separate legal identity. The question of a sole proprietorship is not one that is before us.

govern the issue of whether someone is a "participant" in an ERISA plan, once the existence of that plan has been established. This makes perfect sense: once a plan has been established, it would be anomalous to have those persons benefitting from it governed by two disparate sets of legal obligations.

Our reading of the statute works no inequity. "[W]hen self-employed individuals elect to incorporate and the corporation employs others, there is simply no basis in ERISA for disregarding the corporate form." *Dodd,* 688 F.Supp. at 571. Dr. Madonia chose to operate his neurological practice as a Virginia corporation. He has enjoyed the recognized benefits of the corporate form with regard to limited liability and corporate tax deductions. Indeed, if other MNA employees were to sue Dr. Madonia as an "employer" for ERISA liability, the corporate form would shield him. *See, e.g., Scarbrough v. Perez,* 870 F.2d 1079, 1082–84 (6th Cir. 1989) (holding that the principal shareholder and CEO of a corporation is not an "employer" and, thus, cannot be subject to ERISA liability except in cases involving corporate veil piercing); *Kracher,* 856 F.2d at 1547–50 (same); *Operating Engineers Pension Trust v. Reed,* 726 F.2d 513, 515 (9th Cir.1984) (same). As the district court stated, "Dr. Madonia has consistently benefitted from the corporate status of his business, and he should not be permitted to deny that status in order to avoid being subject to ERISA regulation."

By concluding that sole shareholders can be considered "participants" in their companies' employee welfare benefit plans, we likewise avoid the situation in which two separate bodies of law would govern a corporation's employee benefits claims. In this particular case, it would seem anomalous to have Madonia seeking recovery under state law theories and Anglin and Martin suing under ERISA. In enacting ERISA, Congress drafted its "'most sweeping federal preemption statute'" in order to achieve uniformity and consistency in the law governing employee benefits. *Holland v. Burlington Indus., Inc.,* 772 F.2d 1140, 1146 (4th Cir.1985), *aff'd sub nom. Brooks v. Burlington Indus., Inc.,* 477 U.S. 901, 106 S.Ct. 3267, 91 L.Ed.2d 559 (1986) (citation omitted). Disallowing share-

holders such as Dr. Madonia from being plan "participants" would result in disparate treatment of corporate employees' claims, thereby frustrating the statutory purpose of ensuring similar treatment for all claims relating to employee benefit plans.

### III.

MNA established a plan to assist its employees in obtaining and financing health insurance coverage. Dr. Madonia is a "participant" in that plan, and Mrs. Madonia has standing to sue as Dr. Madonia's plan "beneficiary." Accordingly, Mrs. Madonia's state law claims relating to that plan were preempted and governed by ERISA, and removal to federal court was proper. The judgment of the district court is

*AFFIRMED.*