**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NANCY A. GARDNER, Individually
and as Administratrix of the Estate
of George A. Gardner,
<u>Plaintiff-Appellant,</u>

v.

E. I. DUPONT DE NEMOURS AND
COMPANY, INCORPORATED, a Delaware
corporation; CONNECTICUT GENERAL            No. 97-2462
LIFE INSURANCE COMPANY, a Cigna
Company, a Connecticut
corporation,
<u>Defendants-Appellees,</u>

and

TRAVELERS INSURANCE COMPANY,
<u>Defendant.</u>

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
Charles H. Haden II, Chief District Judge.
(CA-96-423-2)

Argued: September 21, 1998

Decided: October 23, 1998

Before WIDENER, HAMILTON, and LUTTIG, Circuit Judges.

_____

Vacated and remanded by unpublished opinion. Judge Luttig wrote
the opinion, in which Judge Widener and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Anthony J. Majestro, MASTERS & TAYLOR, L.C., Charleston, West Virginia, for Appellant. Eric Wayne Iskra, SPIL-MAN, THOMAS & BATTLE, P.L.L.C., Charleston, West Virginia, for Appellee duPont; Robert H. Sweeney, Jr., JENKINS, FENSTER-MAKER, P.L.L.C., Huntington, West Virginia, for Appellee Connecticut General. **ON BRIEF:** Charles L. Woody, Paula Durst Gillis, SPILMAN, THOMAS & BATTLE, P.L.L.C., Charleston, West Virginia, for Appellee duPont.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

LUTTIG, Circuit Judge:

Nancy Gardner appeals the district court's dismissal of her state-law claims against appellees on the ground that her claims were pre-empted by the federal Employee Retirement Income Security Act ("ERISA"). For the reasons that follow, we hold that Gardner's claims were not preempted by ERISA, and therefore that the district court erred in dismissing these claims.

I.

George Gardner, appellant's deceased husband, worked for appel-lee DuPont for nine years, from 1980 until 1989, before he retired in 1989 due to deteriorating health. While at DuPont, Mr. Gardner par-ticipated in two life insurance programs -- the "noncontributory" plan and the "contributory" plan. The "noncontributory" plan automatically covers every DuPont employee from the first day of work and contin-ues after the employee leaves the company; DuPont manages and pays for this plan, under which Mr. Gardner had $25,000 of coverage. The "contributory" plan offers optional additional coverage. If an

2

employee chooses to participate in this plan, DuPont and the employee split the premiums as long as the employee remains with DuPont. While at DuPont, Mr. Gardner had $84,000 of coverage under the contributory plan.

Whether an employee's contributory coverage continues after he leaves DuPont depends upon the length of the employee's tenure at the company and, if the employee remained at the company a sufficient length of time to have a choice, whether the employee chooses to continue in the contributory plan. An employee who leaves DuPont after at least 15 years of service may elect to remain in the contributory plan. But if he departs with less than 15 years of service, no such election is possible. The plan provides that the insurance of an employee who is ineligible to elect to remain in the company's contributory plan "shall be cancelled automatically on the date [ ] the employee ceases . . . to be an employee of the Company." DuPont instructs these departing employees, however, that, although they may not continue in DuPont's contributory plan, they may contact the life insurance carrier, in this case Connecticut General, on their own and convert the group contributory policy to an individual policy. If the former employee converts to an individual policy, he assumes responsibility for the entire premium.

Mr. Gardner left DuPont after only nine years, and thus was ineligible to remain in DuPont's contributory plan. In accordance with its practice, however, DuPont informed Mr. Gardner of his right to convert to an individual policy with Connecticut General. A "Benefits Check List for Terminations" noted that his "Contributory Life Insurance" coverage was "dropped" effective February 28, 1989, his date of departure. Another form that he apparently received explained that he had "Non-contributory for life" and that"Contributory life can be converted by contacting [the insurance company] directly." Thus, as the district court found, Mr. Gardner "was given the opportunity to convert the contributory insurance into a separate policy, at his own expense." Mr. Gardner, however, did not convert the contributory policy into a separate policy.

Three years after his retirement, in late 1992, DuPont began deducting from Mr. Gardner's disability checks $50.40 per month for life insurance. This, despite the fact that Gardner was not eligible to

3

elect continued coverage under DuPont's contributory plan and had not converted his group contributory plan to an individual plan. DuPont continued to deduct life insurance amounts from his disability checks through 1993.

In late 1993, with his health rapidly deteriorating, Mr. Gardner decided to purchase a house for his soon-to-be-widow. Hoping to assign his life insurance as collateral, he contacted DuPont's benefits department. A clerk, Christine Gaesser, sent him a computer printout stating that he had $25,000 noncontributory coverage and $84,000 contributory coverage, less $3,000 previously paid, for a total of $106,000. At the bottom of the printout, Ms. Gaesser wrote that the current value of his two policies was $166,000. This latter number was an error in addition, and the printed information on contributory coverage was also error, as Mrs. Gardner was soon to learn, because under the terms of DuPont's plan Mr. Gardner was ineligible for contributory coverage once he left the company.

After Mr. Gardner's death in March 1994, DuPont paid the $25,000 in noncontributory coverage, but refused to pay the $84,000, claiming that the deductions from his disability check over the last year and a half had resulted from computer error. DuPont refunded the deductions of $806.40.

Mrs. Gardner thereafter sued both DuPont and Connecticut General in West Virginia state court, asserting various state-law claims. Defendants removed to federal court on the ground that ERISA pre-empted the claims. The district court first held that ERISA pre-empted all of the "state causes of action associated with the non-contributory policy," then, after further discovery, held similarly for the claims associated with the contributory policy. At the invitation of the court, Mrs. Gardner then filed an amended complaint adding various claims under ERISA. The district court subsequently granted summary judgment in favor of defendants on the ERISA claims. From the district court's order of summary judgment, Mrs. Gardner appeals.

II.

ERISA pre-empts all state claims that "relate to any employee benefit plan." 29 U.S.C. § 1144. This Court held in Madonia v. Blue

4

Cross & Blue Shield of Virginia, 11 F.3d 444 (4th Cir. 1993), that this language establishes "two criteria" as prerequisites for pre-emption:

> [F]irst, an "employee benefit plan" must exist; second, [the plaintiff] must have standing to sue as a "participant" or "beneficiary" of that employee benefit plan.

Id. at 446. See Curtis v. Nevada Bonding Corp., 53 F.3d 1023, 1027 (9th Cir. 1995) ("[W]ithout standing to enforce ERISA, there can be no ERISA preemption."). As Madonia notes, ERISA chiefly allows enforcement suits only by a "participant or beneficiary," although fiduciaries and the Secretary of Labor may sue in certain instances. 29 U.S.C. § 1132(a).

Both the Supreme Court and this Circuit have explained that a person who is, beyond question, ineligible to participate in an employee benefit plan cannot be a "participant" for purposes of ERISA. ERISA defines "participant," in relevant part, as

> any employee or former employee of an employer, . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer, . . . or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). A former employee, to fall under this definition, must "have . . . a reasonable expectation of returning to covered employment or [ ] have a colorable claim to vested benefits." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 117 (1988) (internal quotations and citation omitted; ellipsis in original). Likewise, anyone claiming that he "may become eligible to receive a benefit" must have a "colorable claim" either that he "will prevail in a suit for benefits" or that "eligibility requirements will be fulfilled in the future." Id. at 117-18.

It is irrelevant if a plaintiff who fails to satisfy the above definition thought he was or should have been a participant. In Coyne & Delany Co. v. Selman, 98 F.3d 1457 (4th Cir. 1996), we explained that when a plan required "active service" in order for someone to be eligible for

5

benefits, it was error to view an employee who was on medical leave and likely never to return to active work as a "participant." Id. at 1462 n.4. Likewise, in Stanton v. Gulf Oil Corp., 792 F.2d 432 (4th Cir. 1986), we affirmed a summary judgment that a former employee who retired before a new retirement plan went into effect, and thus under its terms could not have been eligible for it, was not a "participant" in the new plan, even though he was receiving a pension under the plan that existed when he retired and would have been eligible for the new plan "but for his leaving Gulf Oil's employ" when he did. Id. at 434-35. See Teagardener v. Republic-Franklin Inc. Pension Plan, 909 F.2d 947, 952 (6th Cir. 1990) ("Explicit in the Supreme Court's definition of `participant' in Bruch is a requirement that the plaintiffs prove either that their right to assets has `vested' or will `vest.'").

By the same reasoning, it does not matter that a plaintiff was once a participant, or that he is a participant in another plan. See Stanton, 792 F.2d at 435; Harris v. Provident Life and Accident Ins. Co., 26 F.2d 930, 933 (9th Cir. 1994).

Mr. Gardner was not a participant in the contributory plan at his death, nor is there a colorable claim that he was. After retiring because of his disability, he had no "reasonable expectation of returning to covered employment." Likewise, he could not have credibly argued that he "may become eligible," 29 U.S.C. § 1002(7), for benefits under the contributory plan or that his benefits "w[ould] vest," Teagardener, 909 F.2d at 952 (internal quotation marks omitted), because, by the plan's terms, and DuPont's own admissions, the contributory plan ceased to cover him once his employment ended, no matter what he did. Although DuPont attempts to find daylight between participation and eligibility, it does not contest that Mr. Gardner's ineligibility for the company's contributory plan is beyond debate. See Appellees' Br. at 14 ("Mr. Gardner was a participant . . . but not eligible for the benefits."); id. at 4 (stating absolute ineligibility of employees who retire after less than 15 years with DuPont).

Nor, for the same reason, could Gardner have brought a "colorable claim to vested benefits." Everyone agrees that he had no such claim and that there was nothing to vest: he did not complete the conversion forms or contact the insurance company when he left DuPont, and even if he had, his coverage would have been through Connecticut

6

General "directly," J.A. at 286, with DuPont and its group life insurance plans uninvolved. If on such facts a "claim to vested benefits" would have been colorable, then any claim would be colorable, effectively repealing ERISA's definitions and eliminating its limitation of suits to certain parties. See Bruch, 489 U.S. at 117.

In response, DuPont largely relies on the district court's reasoning, although at oral argument it did also make the odd claim that Mr. Gardner was a "participant" chiefly because of DuPont's errors in deducting "premiums" for the contributory plan and in telling him he that he was a participant. But the district court doubly erred in finding Mr. Gardner to be a participant. First, it wrongly thought that Mrs. Gardner was suing under both the contributory and noncontributory policies. Mrs. Gardner's complaint, albeit not a model of clarity, seeks damages only relating to the individual (contributory) policy that Mr. Gardner thought he had. Mrs. Gardner acknowledges in her complaint -- and both sides concede on appeal-- that she was paid in full under the noncontributory plan. This error in turn led the district court mistakenly to find that ERISA governed the (nonexistent) claims involving the noncontributory policy and therefore that it had supplemental jurisdiction over the claims involving the contributory policy. Second, the district court confused Mr. Gardner's status while at DuPont with his changed status upon his departure. As explained above, only his status after departure from DuPont is relevant.

Because Mr. Gardner was not a participant, Mrs. Gardner cannot be a beneficiary under ERISA and thus has no standing. Madonia, 11 F.3d at 448. Under Madonia and Curtis , therefore, her state-law claims are not pre-empted.*

Title 28, U.S.C. § 1447(c) requires that "[i]f at any time before final judgment it appears that the district court lacks jurisdiction, the case shall be remanded" to state court. Although there is no longer federal question jurisdiction over this case via ERISA pre-emption, it appears from Gardner's amended complaint that there is still diversity

_____

*Because Mrs. Gardner pleaded ERISA claims in her amended complaint only because of the district court's prior erroneous dismissal of her state-law claims (which she re-pleaded in the amended complaint), we do not reach the merits of the district court's dismissal of the ERISA claims.

jurisdiction. There is complete diversity, and the amount in contro-versy exceeds $75,000. <u>See</u> 28 U.S.C. § 1332(a). Accordingly, we vacate the district court's judgment and remand to the district court.

<u>VACATED AND REMANDED</u>