*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name:  06a0279p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

Nos. 04-1146/1942; 05-1109

RICHARD L. MOORE,

*Plaintiff-Appellant,*

v.

LAFAYETTE LIFE INSURANCE CO., an Indiana
Corporation; MICHIGAN TOOLING ASSOCIATION, a
Michigan Corporation; MICHIGAN TOOLING
ASSOCIATION LONG TERM DISABILITY PLAN;
MICHIGAN TOOLING ASSOCIATION SHORT TERM
DISABILITY PLAN, Jointly and Severally,

*Defendants-Appellees.*

No. 04-1945

RICHARD L. MOORE,

*Plaintiff-Appellant/Cross-Appellee,*

v.

LAFAYETTE LIFE INSURANCE CO., an Indiana
Corporation,

*Defendant-Appellee/Cross-Appellant,*

MICHIGAN TOOLING ASSOCIATION, a Michigan
Corporation; MICHIGAN TOOLING ASSOCIATION
LONG TERM DISABILITY PLAN; MICHIGAN TOOLING
ASSOCIATION SHORT TERM DISABILITY PLAN,
Jointly and Severally,

*Defendants.*

Nos. 04-1146/1942/1945;
05-1109

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 01-73944—Robert H. Cleland, District Judge.

Argued:  December 2, 2005

Decided and Filed:  August 7, 2006

1

Before: CLAY and COOK, Circuit Judges; OLIVER, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Mary C. O'Donnell, DURKIN, McDONNELL, CLIFTON & O'DONNELL, Detroit, Michigan, for Appellant. D. Andrew Portinga, MILLER, JOHNSON, SNELL & CUMMISKEY, Grand Rapids, Michigan, Elaine A. Parson, RAYMOND & PROKOP, Southfield, Michigan, for Appellees. **ON BRIEF:** Mary C. O'Donnell, Gregory A. Clifton, DURKIN, McDONNELL, CLIFTON & O'DONNELL, Detroit, Michigan, for Appellant. D. Andrew Portinga, MILLER, JOHNSON, SNELL & CUMMISKEY, Grand Rapids, Michigan, Elaine A. Parson, Jeffrey D. Wilson, RAYMOND & PROKOP, Southfield, Michigan, for Appellees.

CLAY, J., delivered the opinion of the court. OLIVER, D. J. (p. 26), delivered a separate concurring opinion, in which COOK, J., joined. COOK, J. (pp. 27-29), delivered a separate opinion concurring in part and dissenting in part.

_____

**OPINION**

_____

CLAY, Circuit Judge. Plaintiff, Richard L. Moore, appeals the district court's judgments in favor of Defendants Lafayette Life Insurance Co. ("Lafayette") and the Michigan Tooling Association ("MTA"). The district court granted judgment to Defendants on Plaintiff's claims under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* Plaintiff also appeals the district court's award of partial attorneys' fees and costs to Defendants, along with sanctions against Plaintiff's attorney. Defendant Lafayette cross-appeals the award of attorneys' fees in its favor as too low. For the reasons which follow, we AFFIRM the decision of the district court in all respects.

**I.**

**BACKGROUND**

**A.     Substantive Facts**

Defendant MTA is an association of approximately 700 member companies in the metal-working industry in Michigan. Plaintiff is a licensed insurance agent in the state of Michigan. MTA hired Plaintiff in 1971 to handle all group life, disability, and workers' compensation insurance for MTA and its member companies. While Plaintiff was initially hired as a salaried employee, in 1972 MTA and Plaintiff agreed that Plaintiff's compensation would come only from commissions for premiums paid and signed a "Memorandum of Understanding" ("MOU") to that effect. Plaintiff's responsibilities included taking "complete responsibility for all Group Life and Disability insurance for the Detroit Tooling Association . . . . handl[ing] all questions, claim problems and generally servic[ing] all participants in the plan . . . ." (J.A. at 1722.) The MOU also provided that Plaintiff would pay all his own expenses. MTA filed 1099s on Plaintiff for income tax purposes.

_____

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

MTA and Plaintiff operated under the MOU until December 1998, when Plaintiff and MTA signed a "Consulting Service Agreement" ("CSA"), whereby MTA would pay Plaintiff a fixed sum of $75,000, in monthly installments, and Plaintiff was deemed an "independent contractor." (J.A. at 273.) Plaintiff was responsible for all federal and state payroll taxes, all expenses incurred in the state of Michigan, and was free to accept outside consulting agreements. MTA continued to file 1099s on Plaintiff for income tax purposes.

Prior to 1996, Royal Maccabees Insurance provided MTA life and disability insurance policies. In 1996, Plaintiff recommended to MTA that MTA switch its insurance provider to Lafayette. Lafayette became MTA's provider of group life and disability insurance in March 1996; Plaintiff signed the Application for Group Insurance as a licensed agent. As the signing agent, Plaintiff attested:

> I have fully explained to the Policyholder that any Employee not in Active Employment or in a class otherwise eligible to apply for insurance coverage on the Contract Effective Date of any Contract to be issued by the Company will not be eligible to apply for any such insurance issued by the Company unless and until such time such Employee becomes a member of a class eligible to apply for insurance coverage.

(J.A. at 236.)

In March 1996, at the time Lafayette began writing insurance polices to MTA, its employees, and MTA member companies, Plaintiff was listed as an "employee" on premium statements submitted by MTA. From 1996 through December 1998, Plaintiff paid the premiums on his own coverage for disability insurance directly to Lafayette.

Plaintiff and MTA operated under the CSA throughout 1999 and into 2000. During this period, MTA deducted the costs of short-term disability ("STD") and long-term disability ("LTD") premiums from Plaintiff's monthly remunerations and remitted the premiums to the insurer, Lafayette. MTA asserts that MTA was reliant on Plaintiff's representations to MTA of who would be a covered "employee" under the terms of the plan. Neither Plaintiff nor MTA informed Lafayette of the terms of the CSA.

In September 2000, Plaintiff filed for STD benefits, and then one month later requested LTD benefits. MTA filed the benefit request forms on behalf of Plaintiff with Lafayette in those same months. Lafayette proceeded to adjudicate the claims for benefits; although there are indications in the record that Lafayette initially indicated that MTA should adjudicate the STD claim, MTA and Lafayette ultimately agreed that Lafayette would adjudicate both claims.

Lafayette ultimately determined that Plaintiff was not a covered "employee" under the ERISA plan. Lafayette does not dispute that "prior to January 1, 1999 [the CSA effective date] [Plaintiff] was eligible for certain group insurance coverages issued by Lafayette . . . . However, facts show that effective January 1, 1999, [Plaintiff's] status with MTA changed. We were not aware of this change in status until [Plaintiff's] claims for benefits were submitted to us." (J.A. at 1923.)

The STD policy states that "[a]ny employee whose employment commenced on or before the effective date of this policy and is actively at work on full time [sic]" was eligible for coverage upon the plan's effective date. (J.A. at 1434.) The STD policy further provides for coverage for employees starting after the effective date of the policy. The STD policy defines "employee" as "an employee in the service of the employer whose terms of employment require him to work at least 20 hours per week." (J.A. at 1435.) The policy further defines "actively at work on full time" to

mean "actually working at least six hours per working day at the employer's place of business or other location where his business requires the employee to be." (J.A. at 1435.)

The LTD policy defines "employee" to mean:

A regular, full-time employee duly recorded as such on the payroll records of the Policyholder, who is regularly working through the entire duration of the Policyholder's work week, and in any event not less than 30 hours per week, and is insured under the terms of this Policy.

(J.A. at 1893.) The clause "on the payroll records" is not further defined.

## B.      Procedural History

Plaintiff filed the instant action in district court on October 17, 2001. Plaintiff alleged that Defendants violated numerous responsibilities under the STD and LTD policies of MTA's ERISA benefit plan and prayed for relief in the form of benefits due, attorneys' fees and costs, and statutory penalties. Specifically, Plaintiff alleged:

Count I: that he was wrongfully denied STD and LTD benefits as an MTA-covered "employee" under 29 U.S.C. § 1132(a)(1)(B);

Count II: that Defendants breached fiduciary duties to Plaintiff with respect to the ERISA plan;

Count III: that if Plaintiff is not covered "employee," Plaintiff qualifies for benefits as a "participating employer" under the plan;

Count IV: that Defendants should pay Plaintiff's attorneys' fees and costs with respect to the ERISA action;

Count V: that Defendants refused to furnish requested information as required by 29 U.S.C. 1132(c); and

Count VI: that Defendants are estopped from asserting that Plaintiff was not covered under the STD and LTD policies.

(J.A. at 17-28 (list formatting not in original).)

At an initial Rule 16 conference, Plaintiff objected to the application of the rules set forth in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998), as controlling the form and extent of discovery in the case. Accordingly, the magistrate judge ordered the parties to brief the applicability of *Wilkins*. In conjunction with its brief and motion on *Wilkins*, Defendant Lafayette filed a motion to dismiss with respect to Counts II, V, and VI. Likewise, Defendant MTA moved to dismiss with respect to Counts I, II, III, and VI. The district court judge consolidated the *Wilkins* motions and the motions to dismiss and issued an opinion and judgment on the motions on August 19, 2002.

The district court denied MTA's motions on Count I, dismissed the first three (of five) subclaims under Count II as against both Defendants, denied the motion to dismiss on Count III, dismissed Count V as against Lafayette, and dismissed Count VI as against both defendants. Additionally, the court concluded that *Wilkins* controlled discovery in the case and therefore restricted discovery to Plaintiff's underlying allegations of denial of due process and the withholding of information count.

Plaintiff filed a motion to reconsider on September 6, 2002. The district court found the motion untimely as exceeding the 10-day limit for motions to reconsider as set by Federal Rule of Civil Procedure 6(a). The court further found the motion to be without merit, noting that Plaintiff did not point to additional authority or facts supposedly left out of the court's consideration of the earlier motions.

After a period of limited discovery, the parties filed cross-motions for partial summary judgment. The district court ruled on these motions on September 19, 2003. In its order, the district court denied Plaintiff's motion for summary judgment on Counts II and V, and further denied Plaintiff's request for expanded discovery under Count I. The court granted Lafayette's motion for summary judgment on Count II, and likewise granted MTA's request for summary judgment on Counts II, III, and V. The surviving Counts were Count I against both Defendants for denial of benefits and Count III to designate Plaintiff a "participating employer" as against Lafayette (the court having found that Count IV, for attorneys' fees and costs, was more properly considered an element of relief requested under the remaining substantive counts). The Court further noted that while Lafayette did not file a motion for summary judgment on Count III, the court had grave doubts as to the viability of such a claim. The court therefore ordered Plaintiff either to stipulate as to the dismissal of Count III against Lafayette, or indicate to the court that Plaintiff intended to pursue Count III against Lafayette, in which case the district court would afford Lafayette an opportunity to file a second motion for summary judgment. Plaintiff voluntarily dismissed Count III against Lafayette on September 30, 2003.

The district court took final action on the substantive counts in this case on January 6, 2004. The court dismissed the remaining Count I against MTA, reasoning that because Lafayette, and not MTA, was responsible for claims administration under the plan, MTA was not a proper defendant in a claim for benefits. Finally, the court concluded that Plaintiff was not a covered employee for purposes of the STD and LTD policies and granted judgment for Defendant Lafayette on Plaintiff's sole remaining claim for benefits in the suit. Plaintiff timely appealed all orders in the case on January 26, 2004.

Defendant MTA thereafter filed motions for attorneys' fees and costs and Rule 11 sanctions against Plaintiff's counsel. Defendant Lafayette filed a motion for attorneys' fees and costs. Plaintiff cross-filed for review of the clerk's taxed bill of costs as submitted by Defendants. On June 21, 2004, the court denied Plaintiff's motion and granted MTA's and Lafayette's motions for attorneys' fees and costs, ordering Plaintiff to pay 50 percent of Defendants' attorneys' fees in addition to Defendants' taxed bill of costs (J.A. at 2552). In addition, the court found, under both Rule 11 and its authority under 28 U.S.C. § 1927, that Plaintiff's counsel should be jointly and severally liable with Plaintiff for the 50 percent assessment.

Plaintiff and Plaintiff's counsel timely appealed the award of attorneys' fees and the imposition of sanctions on July 20, 2004. Defendant Lafayette timely cross-appealed its award of attorneys' fees as too low on July 29, 2004.

## II.

## ANALYSIS

### A.    The District Court's Initial Determinations Under ERISA

In arguments to this Court, Plaintiff avers that in its August 19, 2002 order the district court improperly dismissed subclaims (a), (b), and (c) of Plaintiff's Count II (breach of fiduciary duty) and improperly dismissed Count VI in its entirety (promissory estoppel).

*1.     Standard of Review*

This Court reviews a district court's judgment in an ERISA case *de novo*, applying the same standard of review to the administrator's action as required by the district court. *See Wilkins*, 150 F.3d at 615-16. Claims for breaches of fiduciary duty and promissory estoppel are not claims for denial of benefits and are therefore addressed in the first instance in the district court, requiring no deference to any administrator's action or decision.

*2.     The District Court Correctly Dismissed Subclaims (a), (b), and (c) of Count II*

Plaintiff's Count II alleged that Defendants breached their fiduciary duties and obligations as follows:

    (a)    Defendants failed to make and authorize short term disability and long term disability benefit payments to plaintiff at a time when Lafayette and/or MTA knew or should have known that he was entitled to such benefits;

    (b)    Defendants unreasonably and/or arbitrarily withheld payments in bad faith knowing the plaintiff's claims to be valid;

    (c)    Defendants unreasonably, arbitrarily and in bad faith failed to pay plaintiff's benefits at a time when defendant[s] had insufficient information to justify such actions;

    (d)    Defendant MTA failed to provide a written plan document and a claims procedure for the STD and LTD policies as required by ERISA §§ 402 and 503 respectively;

    (e)    Other breaches of fiduciary duties yet unknown, but which will become known to plaintiff through discovery.

(J.A. at 22.) Plaintiff's claims under Count II were brought under 29 U.S.C. § 1132(a)(3), ERISA's "catch all" remedial section.

The district court reasoned that subclaims (a) through (c) were merely restatements of Plaintiff's claim for benefits. The district court reasoned that Plaintiff's ability to bring suit for payment of benefits under 29 U.S.C. § 1132(a)(1) precluded Plaintiff's suit under the "catch-all" remedial section for those subclaims sounding as failure to pay due benefits. *See Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996); *see also Wilkins*, 150 F.3d at 615-16 ("Because § 1132(a)(1)(B) provides a remedy for [the plaintiff's] alleged injury . . . he does not have a right to a cause of action for breach of fiduciary duty pursuant to § 1132(a)(3) . . . . To rule in [the plaintiff's] favor would allow him and other ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected.") (citing *Varity Corp.*, 516 U.S. at 512 (1996)).

The district court was correct. The allegedly wrongful actions referred to in subclaims (a) through (c) all relate to Plaintiff's denial of benefits and point to the same remedy as Plaintiff's claim under Count I. As such, Plaintiff is precluded from using § 1132(a)(3) for allegedly wrongful actions addressable under § 1132(a)(1).

*3.     The District Court Correctly Dismissed Count VI in its Entirety*

Under Count VI, Plaintiff claims that MTA and Lafayette are estopped from asserting that Plaintiff is not a covered employee under the STD and LTD policies. Plaintiff claims that Plaintiff

relied on representations by MTA and Lafayette that his disability coverage would continue under the CSA, and in particular that MTA's remittance of premium payments to Lafayette on Plaintiff's behalf is conduct inconsistent with any subsequent position that Plaintiff is not eligible for benefits.

This Court has recognized that promissory estoppel is a viable theory in ERISA welfare benefit actions. *See Sprague v. Gen. Motors, Inc.*, 133 F.3d 388, 403 (6th Cir. 1998). The elements of an estoppel claim are as follows:

(1)    there must be conduct or language amounting to a representation of material fact;

(2)    the party to be estopped must be aware of the true facts;

(3)    the party to be estopped must intend that the representation be acted on, or the party asserting the estoppel must reasonably believe that the party to be estopped so intends;

(4)    the party asserting the estoppel must be unaware of the true facts; and

(5)    the party asserting the estoppel must reasonably or justifiably rely on the representation to his detriment.

*Sprague,* 133 F.3d at 403 (list formatting not in original).

Typically, estoppel actions occur when a plan fiduciary misrepresents the actual meaning of plan terms in a situation where the plan itself is ambiguous. *See id.* at 404. Plaintiffs cannot recover under an estoppel theory for misrepresentations which contradict unambiguous, written plan terms because their reliance on the subsequent representation would be unreasonable. *See id.* The district court found that Plaintiff had failed to base his promissory estoppel claim on a premise that the plan terms were ambiguous. Because, in the district court's determination, Plaintiff did not allege that the plan documents were ambiguous, the district court granted judgment for Defendants on Plaintiff's promissory estoppel theory.[1]

This Court can affirm a district court on any basis supported by the record. *See City Mgt. Corp. v. U.S. Chem. Corp.*, 43 F.3d 244, 251 (6th Cir. 1994). Plaintiff did properly allege that the plan documents were ambiguous, insofar as Plaintiff was arguing over the meaning of "employee" under the plan. Nonetheless, Plaintiff cannot prove at least one element of promissory estoppel with respect to each Defendant and therefore cannot prevail.

Plaintiff cannot show that his reliance on any alleged misrepresentations by MTA management was *reasonable*, as required by the Supreme Court and this Circuit. *See Sprague,* 133 F.3d at 403; *Gregg v . Transp. Workers of Am. Int'l*, 343 F.3d 833, 841 (6th Cir. 2003). Plaintiff admits to being more knowledgeable about insurance coverage issues than anyone in management at MTA. Plaintiff was the self-acknowledged expert in welfare benefits coverage for MTA. Plaintiff admitted that he sold the policy at issue to MTA and likewise explained the policy terms to MTA officers, including the term on covered employees. Plaintiff admitted that he was the "go to" guy for insurance questions held by MTA and its member companies. (J.A. at 1031-32.) Plaintiff had worked in insurance for over 30 years. Under the 1972 MOU between Plaintiff and

---

[1]Judge Cook's partial dissent insists that this Court's determination that Plaintiff is not, in fact, an "employee" under ERISA, *see infra*, deprives this Court of jurisdiction over this case. We therefore fail to see how Judge Cook could join Judge Oliver's conclusion on the merits of Plaintiff's promissory estoppel claim, inasmuch as promissory estoppel is merely an alternative theory of recovery under Plaintiff's ERISA benefits claim.

MTA, Plaintiff handled all questions and claim problems for MTA's group life and disability insurance plans. Any reliance by Plaintiff on representations by MTA management going to insurance coverage, therefore, would have been unreasonable under the circumstances of this case and in light of Plaintiff's acknowledged superior expertise on the specific insurance policies at issue.

This is not to say that an insurance "expert" can never prevail in an ERISA action under a promissory estoppel theory, only that reasonable reliance by Plaintiff would require a representation from someone with better or more specific knowledge than Plaintiff, or at least from someone who Plaintiff reasonably believed to have better or more specific knowledge. Under the circumstances of this case, for example, had *Lafayette* known the terms of Plaintiff's relationship with MTA under the CSA and then represented to Plaintiff that Plaintiff was covered under the plan, Plaintiff's promissory estoppel theory might be viable. Under the facts of this case, however, Lafayette did not know the terms of the CSA and therefore did not know whether Plaintiff was an "employee" under the plan. *See infra*, Part II.C. Consequently, any alleged representations by Lafayette were not made while Lafayette was "aware of the true facts" (criteria two for a promissory estoppel claim), and Plaintiff therefore cannot assert promissory estoppel against Lafayette.

**B.     The District Court Properly Limited the Scope of Discovery for the Remaining Claims Under *Wilkins***

Plaintiff argues that the district court improperly limited the scope of discovery for his remaining benefits and breach of fiduciary duty claims. We disagree.

*1.     Standard of Review*

This Court reviews the district court's conclusions as to the applicability of *Wilkins de novo*. *Cf. Putney v. Medical Mut.*, 111 Fed. App'x 803, 806 (6th Cir. 2004) (unpublished opinion).

*2.     Wilkins Applies to All ERISA Benefit Cases*

In *Wilkins*, this Court clarified the permissible scope of discovery in an ERISA action in federal district court. 150 F.3d at 618-19. This Court instructed district courts to follow a two-step process in adjudicating an ERISA benefit action:

1.     As to the merits of the action, the district court should conduct a *de novo* review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.

2.     The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.

*Id.*

Plaintiff argues that because he alleged that Defendants denied him due process in adjudicating his claim for benefits, Plaintiff was entitled to discovery into his denial of benefits claim. Plaintiff argues that his case is distinct from the action in *Wilkins* because, among other things: 1) the claimant in that case did not allege violations of due process, 2) there was no

confusion in the *Wilkins* case about which documents actually constituted the applicable ERISA plan, and 3) there was no confusion in *Wilkins* about who was the plan administrator.

While Plaintiff is correct about the factual dissimilarities between *Wilkins* and his case, these dissimilarities do not make the Court's instructions in *Wilkins* any less applicable to the case at bar. Plaintiff's arguments about the inapplicability of *Wilkins* all come back to whether Plaintiff had sufficient opportunity to present evidence and arguments to Defendants and to respond to Defendants contentions – in essence, all due process issues. The *Wilkins* panel foresaw occasions in which the procedural process of gathering all pertinent information may have broken down at the administrative level and directed the courts to permit discovery in those cases. *Wilkens*, 150 F.3d at 619. ("The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision.") If discovery into the alleged procedural defects supports a plaintiff's allegations of due process denial, then a district court is obligated to permit discovery into more substantive areas of a plaintiff's claim. *See id.* If a court finds that due process was not denied, however, then it is appropriate for the district court to deny further discovery into substantive areas, or else a plaintiff could circumvent the directive of *Wilkins* merely by pleading a due process problem. *Cf. id.*

### 3.        *The District Court Properly Applied* Wilkins

The district court permitted discovery into whether Plaintiff was actually denied due process. The district court noted that "the court will not expand discovery until it is proven that such a denial of due process occurred." (J.A. at 44.) This order was entirely consistent with the intent and letter of *Wilkins*.[2] Plaintiff argues that the district court's ruling on *Wilkins* somehow held Plaintiff to a higher standard than this Court requires under *Wilkins*. (*See* Pl. Br. 23-24 ("In neither *Vanderlock* nor *Wilkins* did this Court require that plaintiff prove the alleged denial of due process before it permitted both expanded discovery and consideration of additional evidence outside of the administrative record.").) We find Plaintiff's argument without merit. The *Vanderlock* panel found, as a matter of law, that the evidence before the court established that the plaintiff in that action had been substantially denied the procedural protections afforded by ERISA. *Vanderklok v. Provident Life & Accident Ins. Co.*, 956 F.2d 610, 617 (6th Cir. 1992). After reaching such a conclusion, this Court remanded to the district court for discovery. *Id.* In the instant action, the district court deferred discovery into Plaintiff's substantive claims until it had enough evidence to determine whether Plaintiff had been substantially denied ERISA's procedural protections. There is no inconsistency between the district court's actions and this Court's holding in *Vanderlock*. Moreover, the only logical reading of this Court's instructions in *Wilkins* is that until a due process violation is at least colorably established, additional discovery beyond the administrative record into a plaintiff's denial of benefits claim is impermissible. *Wilkins* was properly followed.

### C.        The District Court Properly Granted Summary Judgment for Defendants on Plaintiff's Claims for Breach of Fiduciary Duty and § 1132(c) Monetary Penalties

Plaintiff argues that the district court improperly granted Defendants summary judgment on his breach of fiduciary duty and § 1132(c) claims. We conclude that the district court properly found that Plaintiff had failed to present evidence of either a due process violation or a breach of fiduciary duties. In addition, the district court did not abuse its discretion in refusing to grant penalties under 29 U.S.C. § 1132(c).

---

[2]That the district court was permitting discovery into due process issues with respect to Defendants' denial of benefits is even clearer when the Court considers the lower court's opinion on Plaintiff's motion for reconsideration: "[U]ntil Plaintiff has proven the denial of due process, the court will not expand the review on the denial of benefits claim." (J.A. at 60.)

1.     *Standard of Review*

This Court reviews summary judgment *de novo. Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 466 n.10 (1992).  Summary judgment is appropriate when there is no genuine issue of material fact, thereby entitling the movant to a judgment as a matter of law. *Kocsis v. Multi-Care Mgt., Inc.*, 97 F.3d 876, 882 (6th Cir. 1996).  This Court's "inquiry, therefore, unavoidably asks whether reasonable [fact-finders] could find by a preponderance of evidence that the plaintiff is entitled to a [judgment]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 322 (1986).

"This Court reviews *de novo* 'the question of whether the procedure employed by the fiduciary in denying the claim meets the requirements of Section [503].'" *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 459 (6th Cir. 2003) (quoting *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 806 (6th Cir. 1996)).

Because a district court has discretion in the award of monetary penalties under 29 U.S.C. § 1132(c), this Court reviews a district court's decision under that section for an abuse of discretion. *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1068 (6th Cir. 1994).  An abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made.  *In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988).

2.     *The District Court Properly Dismissed Plaintiff's Breach of Fiduciary Duties Claim*

The district court allowed Plaintiff's breach of fiduciary duties claim to proceed, with discovery, to the extent that the claim alleged 1) that Defendants had made material misrepresentations to Plaintiff about Plaintiff's eligibility for benefits, and 2) that Defendants had failed to provide Plaintiff with requested plan documentation.  (J.A. at 40-45.)  Inherent in these allegations was Plaintiff's assertion that Defendants had denied Plaintiff due process in the adjudication of his denial of benefits claim, and the district court reached Plaintiff's due process allegations in ruling on Plaintiff's claim for breach of fiduciary duty.

a.     *Breach of fiduciary duty claims under ERISA*

This Court has recognized an equitable claim by a participant against an ERISA plan fiduciary arising out of 29 U.S.C. § 1132(a)(3) when a fiduciary misleads a participant or beneficiary. *See Krohn v. Huron Mem. Hosp'l*, 173 F.3d 542, 546 (6th Cir. 1999).

Pursuant to § 1002(21)(A) of ERISA:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).  ERISA also provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1).

A fiduciary breaches his duty by providing plan participants with materially misleading information, "regardless of whether the fiduciary's statements or omissions were made negligently or intentionally." *Krohn*, 173 F.3d at 547 (internal quotation and citation omitted).  "Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for a breach of fiduciary duty." *Drennan v. Gen. Motors Corp.*, 977 F.2d 246, 251 (6th Cir. 1992) (internal quotation and citation omitted).  A lower court in this Circuit has applied the fiduciary duty/misrepresentation case law of

this Court to a plaintiff's claim that a misrepresentation precluded her from seeking alternative sources of disability coverage. *See Parks v. Fin. F.S.B.*, 345 F. Supp. 2d 889, 897 (W.D. Tenn. 2004).

To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show:

(1)    that the defendant was acting in a fiduciary capacity when it made the challenged representations;

(2)    that these [representations] constituted material misrepresentations; and

(3)    that the plaintiff relied on those misrepresentations to [his] detriment.

*James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002). "Whether an affirmative misrepresentation was 'material' is a mixed question of law and fact. [] [A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision about if and when to retire." *Id.* (internal quotations and citations omitted). Finally, a plaintiff's reliance on the misrepresentation must be "reasonable." *Parks*, 345 F. Supp. 2d at 897; *cf. Gregg*, 343 F.3d at 843 (requiring defendant plan administrator show that its reliance on financial experts was reasonable).

> b.    *The district court correctly concluded that no genuine issues of material fact existed as to Defendants' liability for alleged misrepresentations*
>
> i.    No misrepresentations were made by either Defendant prior to Plaintiff's signing of the CSA

The district court found that Plaintiff had failed to put forth any evidence that MTA or Lafayette made misrepresentations to Plaintiff about the effect of the CSA on his status as a covered "employee" prior to Plaintiff's signing of the CSA. The district court referred to Plaintiff's deposition testimony, in which Plaintiff's testimony as to statements by Defendants contain no exact time reference. Plaintiff's only time reference cites statements made at a "December 1998" meeting. (*See* J.A. at 273, 1060.) Defendant MTA's witness testified in a later deposition that this meeting took place on December 3, 1998, one day after Plaintiff signed the CSA. In addition, elsewhere in his deposition testimony, Plaintiff asserts that he signed the CSA within moments of its presentation to him, without discussing its terms or its effect on Plaintiff's disability coverage with Defendants. The district court refused to consider a subsequent affidavit submitted by Plaintiff in support of his motion for summary judgment as an unreliable affidavit pursuant to *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) (noting that a "party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony"). Plaintiff's late-filed affidavit states that Plaintiff sought and received assurance from Defendants, prior to signing the CSA, that the CSA would not affect Plaintiff's disability coverage.

Plaintiff alleges that the district court's reference to Plaintiff's deposition testimony was somehow incomplete and unjustified, and asserts that counsel for Defendants, taking the deposition, somehow had the obligation to establish when the alleged misrepresentations were made. (*See* Pl. Br. 40.) Plaintiff further argues that the district court improperly discounted Plaintiff's affidavit.

Plaintiff's assertions that somehow Defendants' counsel had the burden of pulling out of Plaintiff when the alleged misrepresentations were made are without merit. At the summary judgment stage, Defendants had the burden of putting evidence or argument before the district court which showed that Plaintiff had failed to establish a genuine issue of material fact. *See* Fed. R. Civ.

Proc. 56. Defendants did this, with respect to any misrepresentations allegedly made *before* Plaintiff signed the CSA, by pointing to Plaintiff's deposition testimony and the lack of dates therein. (*See* J.A. at 470-71.)  The burden then shifted to Plaintiff to show evidence in the record from which a reasonable trier of fact could find that Defendants did make misrepresentations prior to Plaintiff's signing of the CSA.  Plaintiff does not do this.

Instead, Plaintiff points to his late filed affidavit and defense counsel's "failure" to establish the dates of the alleged statements.  We find that the district court correctly excluded the affidavit from consideration because it cannot be reconciled with Plaintiff's deposition testimony that Plaintiff signed the CSA within moments of receiving it and without asking any questions beyond "who . . . wants this?"  (J.A. at 1059.)  Further, the district court correctly found that Plaintiff had failed to put forth sufficient evidence to survive summary judgment.  Plaintiff cannot establish a date for the alleged misrepresentations, and Defendants' evidence indicates that any discussions as to Plaintiff's continued disability coverage, if such discussions did occur, took place after Plaintiff signed the CSA.[3]  Plaintiff therefore could not have relied on these alleged misrepresentations in signing the CSA.

> ii.     Plaintiff cannot show reasonable reliance on any alleged misrepresentations by MTA after Plaintiff signed the CSA

Plaintiff alleges that MTA misrepresented Plaintiff's eligibility for disability benefits after Plaintiff signed the CSA by deducting premium payments from Plaintiff's monthly remunerations and remitting these premiums to Lafayette.

The district court found that any reliance by Plaintiff on statements made by MTA personnel would be unreasonable, when Plaintiff was the self-acknowledged expert in welfare benefits coverage for MTA.  Plaintiff admitted that he sold the policy at issue to MTA and likewise explained the policy terms to MTA officers, including the term on covered employees.  Plaintiff admitted that he was the "go to" guy for insurance questions held by MTA and its member companies.  Plaintiff had worked in insurance for over 30 years.   Plaintiff began his insurance career as an underwriter for AETNA Casualty.  Plaintiff was originally hired by MTA in 1971 to manage MTA's insurance programs.  When Plaintiff and MTA signed an MOU in 1972, Plaintiff continued to handle all questions and claim problems for MTA's group life and disability insurance.

We find that the district court correctly concluded that any reliance by Plaintiff on representations by MTA management personnel as to the CSA's effect on Plaintiff's disability coverage would be unreasonable in light of Plaintiff's undisputed position *vis-a-vis* MTA management on insurance issues.  Plaintiff argues that he was not an undisputed expert on ERISA. Plaintiff need not be an undisputed expert on ERISA, however, to be the undisputed most knowledgeable person operating in or with MTA on welfare benefit issues.  Plaintiff admits in his brief to this Court that when Plaintiff was unable to answer an MTA employee or member's question on welfare benefits, Plaintiff would refer such questions to Lafayette.  Plaintiff does not assert that Plaintiff would refer such unanswerable questions to a member of MTA management.  Were Lafayette, not MTA, to have represented to Plaintiff that Plaintiff was a covered "employee" under the terms of the CSA, Plaintiff's reliance might be reasonable.  In light of Plaintiff's superior

---

[3]Plaintiff additionally argues that general assertions by MTA management in the year leading up to the CSA, that upon Plaintiff's retirement or change in status, his coverage under the benefit plan would remain the same, materially misrepresented Plaintiff's disability benefits to Plaintiff.  This argument fails due to the very generality of the statements upon which Plaintiff purportedly relied.  These statements do nothing more than speak to management's desire at the time the statement were made to maintain Plaintiff's coverage. The statements do not represent that the CSA, which Plaintiff subsequently signed, actually maintained Plaintiff's eligibility for benefits.  In fact, the general assurances do not refer to any specific agreement or arrangement.

insurance knowledge, however, Plaintiff's reliance on any representations by MTA management would be unreasonable.

> iii.     Plaintiff has failed to show that Lafayette made misrepresentations to Plaintiff after Plaintiff signed the CSA

Plaintiff does not put forth any evidence that Lafayette knew the terms of the CSA prior to Plaintiff's application for disability benefits. Plaintiff argues that Lafayette knew that Plaintiff was going to operate under a consulting arrangement with MTA beginning in 1999, but knowing that Plaintiff's relationship with MTA was going to change is not the same as knowing the terms of that new relationship. Plaintiff testified that he could not recall providing Lafayette with a copy of the CSA. (J.A. at 1068.) Without any evidence that Lafayette knew the terms of Plaintiff's status under the CSA, any alleged misrepresentations by Lafayette could not even have been negligently made. The district court therefore correctly granted summary judgment for Lafayette on Plaintiff's breach of fiduciary duty/misrepresentation claim.

> 3.     *The District Court Correctly Concluded That Plaintiff Had Failed to Create a Genuine Issue of Material Fact as to Whether Plaintiff Was Denied Due Process in the Adjudication of His Claim*

The district court found that despite some initial confusion as to the proper ERISA documentation, the lack of a summary plan description, and some initial disagreement between MTA and Lafayette as to who was responsible for adjudicating Plaintiff's STD claim, the claim was ultimately adjudicated without any substantive impairment to Plaintiff's procedural rights. The district court concluded that Plaintiff had been afforded a full opportunity to present any and all evidence to Lafayette in support of Plaintiff's claims for disability and that Plaintiff could have taken advantage of an appeals process should Plaintiff have chosen to do so.

Plaintiff argues that numerous procedural defects "deprived [Plaintiff] of any assurance that the process would be something other than arbitrary." (Pl. Br. 47.) Plaintiff fails, however, to show how these procedural defects prejudiced Plaintiff's ability to put desired evidence in front of the claims adjudicator, Lafayette. Generally, the courts have recognized in ERISA cases that procedural violations entail substantive remedies only when some useful purpose would be served. *Kent*, 96 F.3d at 807. Neither does Plaintiff point to any evidence in briefs to this Court or to the district court which Plaintiff argues he would have placed before Lafayette had Plaintiff been given an opportunity.

Plaintiff argues that he was prejudiced by Lafayette's adjudication of Plaintiff's STD claim. Under a 1999 Agreement between Lafayette and MTA, MTA agreed to administer claims for STD benefits. MTA, however, asked Lafayette to administer Plaintiff's claim for STD benefits because of a feared conflict of interest due to Plaintiff's close association with MTA. Lafayette ultimately agreed to do so. Plaintiff alleges that were MTA, instead of Lafayette, to have adjudicated his STD claim, Plaintiff would have prevailed in his pursuit of benefits because MTA "admitted" that Plaintiff was a covered "employee" under the ERISA plan in its Answer to Plaintiff's Complaint. (Pl. Br. 46.) Plaintiff's argument, however, misconstrues Defendants' obligations to Plaintiff. Lafayette was ultimately responsible under the terms of the STD policy itself for the adjudication of STD claims. The subsequent contract between Lafayette and MTA did not confer legal entitlements on Plaintiff. Plaintiff was entitled to substantial compliance by Defendants with ERISA's procedural requirements in claims administration. Contractual arrangements as to who was to engage in this process do not affect whether Plaintiff actually enjoyed these procedural protections.

ERISA requires claim administrators to put a claimant on notice of the reasons for its denial and to afford claimants an opportunity to appeal an adjudicator's initial decision. Pursuant to § 503,

> Every employee benefit plan shall –
>
> (1)    provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2)    afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision for denying the claim.

29 U.S.C. § 1133.

Generally, an administrator's failure to comply with ERISA procedural requirements can result in a remand by the reviewing court to the administrator. *See VanderKlok*, 956 F.2d at 619. This Court, however, has adopted the rule that administrators need only substantially comply with these ERISA notice requirements in order to avoid remand. *Kent*, 96 F.3d at 807. To decide whether there is substantial compliance, this Court considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances. *See Marks*, 342 F.3d at 461; *see also White v. Aetna Life Ins. Co.*, 210 F.3d 412, 414 (D.C. Cir. 2000); *Brehmer v. Inland Steel Indus. Pension Plan*, 114 F.3d 656, 662 (7th Cir. 1997) ("The question is whether [plaintiff] was supplied with a statement of reasons that under the circumstances of the case permitted a sufficiently clear understanding of the administrator's decision to permit effective review."). "When claim communications as a whole are sufficient to fulfill the purposes of Section 1133 the claim decision will be upheld even if a particular communication does not meet those requirements." *Kent*, 96 F.3d at 807. In this analysis, this Court asks whether the plan administrators fulfilled the essential purpose of § 503 – notifying Plaintiff of their reasons for denying his claims and affording him a fair opportunity for review. *Id.*

Plaintiff argues that Lafayette's denial letter was inadequate and that Plaintiff was denied an appeals process. Plaintiff's arguments, however, are unsupported by the record. Lafayette's denial letter explained its reason for denying Plaintiff's claim in depth – Lafayette's determination that Plaintiff was not an "employee" under the terms of the plan. (J.A. at 1655.) The denial letter was more than four pages in length and further explained the factual basis for Lafayette's determination that Plaintiff was not an "employee." We find that the letter very clearly placed Plaintiff on notice as to why Lafayette was denying benefits.

Similarly, Plaintiff was very clearly afforded an appeals procedure. Before any decision on Plaintiff's claim had been reached, the adjudicator forwarded to Plaintiff's counsel a copy of Lafayette's "Grievance Procedure" used in connection with Lafayette's LTD policy. The Grievance Procedure established a contact person and procedure for any claimant wishing to contest a coverage determination. Moreover, Lafayette's letter of July 20, 2000, denying benefits, concluded by stating:

> Should you and your client disagree with our conclusions that neither long-term disability nor short-term disability benefits can be paid, you may certainly, prior to the institution of any formal grievance with us, provide us with the written basis for your opinion and any information supporting your belief to us in writing and we will consider it.

(J.A. at 1658.) Plaintiff does not contend that he attempted to submit any additional evidence to Lafayette or that he attempted to institute formal grievance procedures as outlined in Lafayette's policy documents held by Plaintiff's counsel.

We find that Plaintiff was afforded a full and fair opportunity to present his claims for benefits to Lafayette. Without any evidence that Plaintiff was precluded from submitting such evidence, or that Plaintiff was prevented from undertaking an administrative appeal, Plaintiff's claims for due process violations must fail.

> 4.     *The District Court Did Not Abuse its Discretion in Refusing to Grant Monetary Penalties Under 29 U.S.C. § 1132(c)*

Under Count V, Plaintiff asserted a claim under 29 U.S.C. § 1132(c) against MTA for failure to furnish requested information. MTA does not dispute that it did not produce a summary plan description as required by ERISA. The district court, however, exercised its discretion in refusing to assess monetary penalties as authorized under 29 U.S.C. § 1132(c). In reaching its decision, the district court noted that Plaintiff had received a copy of the relevant policies, if not the summary plan descriptions, that Plaintiff's expertise in the benefit field counseled against any finding of prejudice as a result of a lack of summary plan descriptions, and that Plaintiff had not, in fact, demonstrated any prejudice from lacking the summary plan descriptions.

This Court has said that courts may consider any prejudice or lack thereof in deciding whether § 1132(c) penalties are warranted. *See Bartling*, 29 F.3d at 1068. We find that the evidence does not firmly establish that a "mistake has been made." *Id.* We therefore affirm the district court's refusal to grant monetary penalties under § 1132(c).

## D.     THE DISTRICT COURT CORRECTLY GRANTED JUDGMENT IN FAVOR OF DEFENDANTS ON PLAINTIFF'S CLAIM FOR BENEFITS

Plaintiff argues that the district court improperly concluded that Plaintiff was not a covered "employee" under ERISA and therefore was not entitled to benefits under the applicable ERISA plan.

> 1.     *Standard of Review*

Courts review a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) *de novo*, unless the plan gives the plan administrator or fiduciary discretionary authority to determine benefit eligibility or construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The parties do not appeal the lower court's determination that the plan administrator here does not have discretionary benefit eligibility authority. This Court reviews the district court's decisions on matters of law in an ERISA benefits action *de novo* and its factual findings for clear error. *See Stoll v. W. & S. Life Ins Co.*, No. 01-3401, 64 Fed. App'x 986, 990 (6th Cir. May 22, 2003) (unpublished opinion).

> 2.     *The District Court Properly Dismissed MTA as a Defendant*

The district court concluded that MTA was not a proper defendant for a claim for benefits because MTA did not participate in the decision to deny Plaintiff benefits under either the STD or the LTD policies. Rather, Lafayette, as the claims administrator, was the proper party defendant for Plaintiff's denial of benefit claim.

According to ERISA, a plan "fiduciary" is one who "exercises any discretionary authority or discretionary control respecting the management of [an ERISA] plan or exercises any authority or control respecting the management or disposition of its assets" or who "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A). This Court has found that "the definition of a fiduciary under ERISA is a functional one, [and] is intended to be broader than the common-law definition" such that the issue of whether one is considered a fiduciary does not turn upon formal designations. *Smith v. Provident Bank*, 170

F.3d 609, 613 (6th Cir. 1999). Therefore, for purposes of ERISA, a "fiduciary" not only includes persons specifically named as fiduciaries by the benefit plan, but also anyone else who exercises discretionary control or authority over a plan's management, administration, or assets. *See Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp. of Mich.*, 139 F.3d 546, 549 (6th Cir. 1998).

Under ERISA a person is a fiduciary only with respect to those aspects of the plan over which he or she exercises authority or control. *See Grindstaff v. Green*, 133 F.3d 416, 426 (6th Cir. 1998). When an insurance company administers claims for employee welfare benefit plans and has authority to grant or deny claims, the insurance company is a "fiduciary" for ERISA purposes. *See Libbey-Owens-Ford Co. v. Blue Cross & Blue Shield Mut. of Ohio*, 982 F.2d 1031, 1035 (6th Cir. 1993). An employer who does not control or influence the decision to deny benefits is not the fiduciary with respect to denial of benefit claims. *Chiera v. John Hancock Mut. Life Ins. Co.*, 3 Fed. App'x 384, 389 (6th Cir. 2001) (unpublished decision) ("Defendant [insurance company] is a fiduciary for purposes of ERISA inasmuch as it had a role in administering the plan because it had authority to accept or reject claims for losses under the group insurance policy as evidenced by the rejection letter that it sent to Plaintiff in response to her attorney's letter.")

Here, despite some initial confusion over proper ERISA titles, Lafayette and MTA agreed early on in the litigation that while MTA is the *plan* administrator, Lafayette is the *claims* administrator and exercised full authority in adjudicating Plaintiff's claim for benefits. It was Lafayette who made a decision with respect to Plaintiff's benefits, not MTA. Lafayette, and not MTA, is therefore the proper party defendant for a denial of benefits claim by Plaintiff. *See Kennard v. Unum Life Ins. Co.*, No. 01-217-B-K, 2002 U.S. Dist. LEXIS 4467, at *4-6 (D. Me. Mar. 14, 2002) (unpublished opinion) (dismissing employer from benefits suit when insurance company, and not employer, made benefit decisions). The district court did not err in dismissing MTA from Plaintiff's suit for benefits.

> 3.     *The District Court Properly Found That Plaintiff Was Not a Covered Employee*
>
> > a.     *As a threshold matter, Plaintiff must meet the definition of "employee" under ERISA*

Plaintiff's action for benefits arises under 29 U.S.C. § 1132(a), which enables a benefit plan "participant" to enforce the substantive provisions of ERISA. The Act elsewhere defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ." § 1002(7).

Plaintiff does not allege that he has vested welfare benefits due to his status as a "former employee" of MTA in reference to his work with MTA prior to 1999. Instead, Plaintiff alleges that he is a "participant" because he was an "employee" of MTA while under the CSA. Thus, Plaintiff's claim for benefits under ERISA "can succeed only if he was [MTA's] 'employee,'" while under the CSA. The Supreme Court has held that to qualify as an "employee" for ERISA purposes, a plaintiff must meet the common law test for employee. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 320-321 (1992). Only once Plaintiff has demonstrated that he meets the common law meaning of "employee" should this Court turn to whether Plaintiff was an "employee" as defined in the STD and LTD policies, as distinct from an "employee" under ERISA.

> > b.     *Plaintiff is not a common law employee*

The Supreme Court has adopted a common law definition of employee under ERISA:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is

> accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

490 U.S. at 751-752 (footnotes omitted).

> *Cf.* Restatement (Second) of Agency § 220(2) (1958) (listing nonexhaustive criteria for identifying master-servant relationship); Rev. Rul. 87-41, 1987-1 Cum. Bull. 296, 298-299 (setting forth 20 factors as guides in determining whether an individual qualifies as a common-law "employee" in various tax law contexts). Since the common-law test contains no shorthand formula or magic phrase that can be applied to find the answer, . . . all of the incidents of the relationship must be assessed and weighed with no one factor being decisive.

*Nationwide*, 503 U.S. at 324 (internal quotations and citations omitted).

The district court considered all the factors outlined in *Nationwide*. The district court concluded that:

a.    MTA exercised no significant control over how Plaintiff performed his duties, and the CSA described Plaintiff as an "independent contractor;"

b.    Plaintiff required significant skill to perform his duties, counseling against finding Plaintiff an employee;

c.    While Plaintiff had an office at MTA, he covered much of his own expenses;

d.    MTA did not appear to require Plaintiff to work on site at MTA;

e.    While MTA and Plaintiff worked together for many years, they did so under a contractual relationship, which changed in December 1998 when the CSA was signed;

f.    Under the terms of the CSA, MTA did not have the right to assign additional duties to Plaintiff;

g.    Plaintiff had significant discretion over when and how long to work;

h.    Plaintiff was paid pursuant to the CSA as an independent contractor and had to remit his own taxes and social security payments;

i.    Plaintiff appeared free to hire assistants if he so chose;

j.    Plaintiff's services were essential to the regular business of MTA;

k.    Plaintiff was not eligible for "employee benefits" in the normal course of MTA business and pursuant to the language of the CSA, which provided for remittance of the balance due under the CSA in the event of Plaintiff's extended illness or medical incapacity; and

l.      Plaintiff's tax treatment indicated Plaintiff was not an employee, because MTA reported Plaintiff's remuneration on 1099s and not W-2s.

(J.A. at 103-10.)  In addition to the *Nationwide* factors, the district court also considered Plaintiff's representation of his employment status on a social security disability benefit application.  In those forms, Plaintiff asserted that he was "self-employed" and "president of [a] one man company." (J.A. at 110.)  Plaintiff further represented that he had "incorporated himself" and that he was receiving payment "until the end of contracts that expire 12-31-00." (J.A. at 110.)

We find that the district court's factual findings are not clearly erroneous.  We further agree with the district court that the balance of the evidence supports the conclusion that Plaintiff does not meet the definition of an "employee" under the common law.  Plaintiff's self-representation to the Social Security Administration is compelling.  When viewed in conjunction with the issuance of 1099s, Plaintiff's responsibility for his own payroll taxes, and reference to Plaintiff as an "independent contrator" by the CSA itself, Plaintiff is not a common law employee and therefore ineligible under an ERISA benefit plan.

**E.      The District Court Did Not Abuse its Discretion in Awarding Partial Attorneys' Fees Under 29 U.S.C. § 1132(g)(1) Against Plaintiff and in Sanctioning Plaintiff's Counsel**

Plaintiff argues that the Court's conclusion that Plaintiff is not a common law employee, and therefore not a "participant" under ERISA, results in a determination that Plaintiff lacks statutory standing and that this Court therefore lacks jurisdiction under 29 U.S.C. § 1132(g)(1) to award fees against Plaintiff.  In the alternative, Plaintiff argues that the district court abused its discretion in awarding attorneys fees against Plaintiff pursuant to 29 U.S.C. § 1132(g)(1).  In addition, Plaintiff's attorney argues that the district court abused its discretion in sanctioning Plaintiff's attorney by holding the attorney jointly and severally liable with Plaintiff for the award of fees.  Plaintiff, Plaintiff's attorney, and Lafayette also take issue with the district court's calculation of awarded fees.  We reject these arguments in turn.

*1.      Standard of Review*

This Court construes the terms of the ERISA statute *de novo.  Jordan v. Mich. Conf. of Teamsters Welfare Fund*, 207 F.3d 854, 858 (6th Cir. 2000).

This Court reviews a district court's award of attorneys' fees and costs under 29 U.S.C. § 1132(g)(1) for an abuse of discretion.  *See* 29 U.S.C. § 1132(g)(1) ("[T]he court in its discretion may allow a reasonable attorney's fees and costs . . . .").  Similarly, this Court reviews a district court's decision to impose sanctions against an attorney for abuse of discretion.  *See* 28 U.S.C. § 1927.[4]  "[A]n abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985).

*2.      The District Court Had Authority to Impose Attorneys' Fees Against Plaintiff*

Plaintiff first argues that the district court lacked authority to impose attorneys' fees against Plaintiff because the court had found that Plaintiff was not an "employee" under ERISA and was therefore ineligible to recover benefits under an ERISA cause of action.  Plaintiff argues that the

---

[4]"Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

district court's factual conclusion as to Plaintiff's status as an "employee" means that Plaintiff can not be a "participant" under § 1132(g)(1), which authorizes the award of attorneys' fees against a participant, beneficiary, or fiduciary of an ERISA plan involved in a suit under the statute. *See* 29 U.S.C. § 1132(g)(1).

We find Plaintiff's argument both self-serving and incorrect.[5] Were the Court's factual determination on the merits as to Plaintiff's status as an "employee" determinative of whether Plaintiff was a "participant" under the ERISA statute, our merits determination would render Plaintiff without statutory standing and this Court without jurisdiction to hear the case at all, a result inapposite to Supreme Court precedent, despite Judge Cook's conclusion to the contrary in her partial dissent in this case.

### a.      ERISA *"participants" and* Firestone

Plaintiff's action for benefits arises under 29 U.S.C. § 1132(a), which enables a benefit plan "participant" to enforce the substantive provisions of ERISA. The Act elsewhere defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." 29 U.S.C. § 1002(7). Plaintiff alleges that he was an employee of MTA when his disability began, making him an "employee . . . who is eligible to receive a benefit . . . ." and therefore a "participant" under ERISA with standing to sue. MTA argues that Plaintiff was an "independent contractor" and not an "employee."

Judge Cook cites to *Ward v. Alternative Health Delivery Systems*, 261 F.3d 624 (6th Cir. 2001), for the proposition that this Court lacks subject matter jurisdiction over an ERISA suit brought by a plaintiff who lacks statutory standing. While we agree that lack of standing is determinative of the jurisdiction of this Court in an ERISA action, we do not agree that Plaintiff lacks standing in the case at bar or that this case is analogous to that cited in *Ward*. The *Ward* plaintiff argued for an extension of existing law under the corollary "beneficiary" standing prong of ERISA. *Id.* at 627. This Court refused to extend the definition of "beneficiary" to include health care providers. *Id.* This was a ruling of law, not a factual determination that the *Ward* plaintiff did not qualify as a beneficiary under traditional definitions.

Plaintiff in the case at bar is not arguing for an extension of existing ERISA standing law. Rather, Plaintiff argues that, as a matter of fact, Plaintiff was an "employee" when his disability began. This goes to the merits. Questions of statutory standing and cause of action often merge. This is the circumstance of the case at bar. Plaintiff alleges that he was an employee of the Defendant MTA when he became disabled. In fact, whether or not Plaintiff was an employee is determinative in the suit. It is circular to argue that because the Court has determined that Plaintiff was not an employee, Plaintiff lacked standing to sue and that this Court therefore lacks jurisdiction. Rather, Plaintiff had a colorable claim that he was an employee and that he was therefore covered by the statute. Logic dictates that the federal courts be able to reach this question.

The Supreme Court addressed this issue in *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. at 101. The *Firestone* Court addressed the question of statutory standing under the term "participant." *Id.* at 115-18. The plaintiffs in *Firestone* were former employees of the tire manufacturer who claimed that they were entitled to benefits under a termination pay plan that Firestone had in place at the time Firestone sold the business in which plaintiffs worked. The

---

[5] The United States Court of Appeals for the Ninth Circuit has explicitly rejected such a self-serving argument as Plaintiff presents here. *See Credit Mgrs. Assoc. of So. Calif. v. Kennesaw Life & Accident Ins. Co.*, 25 F.3d 743 (9th Cir. 1994) ("[I]t would be unjust to permit [plaintiff] to insulate itself from liability for attorney's fees simply because [he] failed to produce sufficient evidence to prevail on [his] claims.").

plaintiffs argued, in part, that they were entitled to receive plan information from Firestone after Firestone sold the business unit in which the plaintiffs worked. The district court agreed with Firestone, however, that at the time plaintiffs requested the information (after the sale of the business unit in which they worked), plaintiffs were no longer participants of Firestone's ERISA plans, obviating Firestone's obligations to provide information. *Id.* at 107. The Third Circuit reversed the district court, reasoning that the right to request and receive information about an employee benefit plan "most sensibly extend[s] both to people who are in fact entitled to a benefit under the plan and those who claim to be but in fact are not." *Id.* at 108 (quoting from the Third Circuit opinion).

On appeal, the Supreme Court rejected the Third Circuit's contention that a litigant's bald assertion of participant status ended the inquiry. *Id.* at 117. The Supreme Court noted that "Congress did not say that all 'claimants' could receive information about benefit plans. To say that a 'participant' is any person who claims to be one begs the question of who is a 'participant' and renders the definition set forth in § 1002(7) superfluous." *Id.*; *see also* 29 U.S.C. § 1002(7) (defining participant as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . ."). The Supreme Court was therefore requiring the court of appeals to address the more particularized definition of participant available in the statute.

In remanding the case, the Supreme Court further noted that "[i]n our view, the term 'participant' is naturally read to mean either employees in, or reasonably expected to be in, currently covered employment . . . or former employees who have . . . a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits." *Firestone Tire & Rubber*, 489 U.S. at 117 (internal quotations and citations omitted). The Supreme Court expanded on its definition even further by noting that:

> "[i]n order to establish that he or she 'may become eligible' for benefits, a claimant must have a colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future. This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.' A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the phrase 'may become eligible.'"

*Id.* at 118-19 (internal quotations and citations omitted). The Supreme Court did not reach the question of whether the claimants qualified as participants in *Firestone*, preferring to leave that determination to the court of appeals upon remand. *Id.* at 118.

The logical reading of the Supreme Court's opinion in *Firestone* is that by failing to look to the statutory definition of participant, the court of appeals abrogated the statutory restriction on who was entitled to plan information. At minimum, the Supreme Court seemed to be saying that a litigant must claim to be an "employee or former employee" as a participant is defined in the ERISA statute, and in determining "participant" status a court must do more than take the claimant's bald assertion. It does not follow, however, that a claim for benefits which revolves around the question of whether a litigant is or was an "employee" under ERISA devolves into a standing issue alone.

Since *Firestone*, the Supreme Court has ruled on a case revolving around the claimant's status as an employee. *See Nationwide*, 503 U.S. at 318. The posture of the parties in *Nationwide* was very similar to the posture in the case at bar. The plaintiff was a former insurance agent for defendant Nationwide. After Nationwide terminated the plaintiff's agency, the plaintiff brought suit under ERISA to enforce the terms of a retirement plan under which the plaintiff claimed eligibility. *Id.* at 320. The proceedings in the lower court turned on whether the plaintiff qualified as an

"employee or former employee" of Nationwide and thereby a "participant" eligible to claim benefits under ERISA. *Id.* at 321-22. The Supreme Court held that common law agency principles applied to determine whether the plaintiff was an "employee" under ERISA. The Supreme Court remanded the case for the application of the correct legal standard. *Id.* at 328. The Court did not imply, in any way, that a finding that the plaintiff was not an employee would function to strip the federal courts of their authority over the case.

### b.          *When the merits and jurisdictional issues merge*

While *Firestone* is directly on point and favors standing, we have also been instructed by the Supreme Court more generally to assume jurisdiction when statutory standing and merits questions converge. *See Bell v. Hood*, 327 U.S. 678, 681-82 (1945). The Fifth Circuit has summarized the meaning of that case very well as it relates to cases such as the one at bar:

> When the basis of federal jurisdiction is intertwined with the plaintiff's federal cause of action, the court should assume jurisdiction over the case and decide the case on the merits. *Bell v. Hood*, 327 U.S. 678, 681-82 . . . . (1945) . . . . "The question of subject matter jurisdiction and the merits will normally be considered intertwined where the [same] statute provides both the basis of federal court subject matter jurisdiction and the cause of action." *Clark v. Tarrant County, Texas,* 798 F.2d 736, 742 (5th Cir. 1986) (citation omitted). In *Williamson* [*v. Tucker*], we explained that
>
>> no purpose is served by indirectly arguing the merits in the context of federal jurisdiction. Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits. . . . Therefore as a general rule a claim cannot be dismissed for lack of subject matter jurisdiction because of the absence of a federal cause of action.
>
> 645 F.2d [404,] 415-16 [5th Cir. 1981]. The basic reason for this rule is obvious. If federal jurisdiction turned on the success of a plaintiff's federal cause of action, no such case could ever be dismissed on the merits.
>
> The exceptions to the rule of *Bell v. Hood* are that jurisdictional dismissal is proper if the federal claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. at 682-83 . . . . This "standard is met only where the plaintiff's claim 'has no plausible foundation' or 'is clearly foreclosed by a prior Supreme Court decision.'" *Williamson*, 645 F.2d at 416 (quoting *Bell v. Health-Mor, Inc.*, 549 F.2d 342, 344 (5th Cir. 1977)).

*Eubanks v. McCotter*, 802 F.2d 790, 793 (5th Cir. 1986).

The Supreme Court has recently expanded on the premise of *Bell v. Hood* and emphasized that the courts must not extend the concept of subject matter jurisdiction, which deals with the "classes of cases . . . falling within a court's adjudicatory authority," to capture other instances in which a court should dismiss or refuse to take a case. *See Kontrick v. Ryan,* 540 U.S. 443, 455-56 (2004) (distinguishing between issues of subject matter jurisdiction and claims processing rules). This Court recently reflected the *Kontrick* distinction in *Primax Recoveries, Inc. v. Gunter*, in which a panel held that a plaintiff's claim under ERISA § 1132(a)(3) was properly dismissed for failure to state a claim, and not for lack of subject matter jurisdiction, when the plaintiff sought legal relief and the statute authorized only equitable actions. 433 F.3d 515, 519-20 (6th Cir. 2006). The *Primax Recoveries* panel further held that because the district court possessed subject matter jurisdiction over the case, even though the plaintiff failed to state a claim, the court possessed full authority to

award attorneys' fees to the prevailing party under the ERISA statute. *Id.* at 520. The *Primax* panel cited to *Steel Co. v. Citizens for a Better Env't,* 533 U.S. 83, 89 (1998), noting that dismissal for lack of subject matter jurisdiction because of the inadequacy of a federal claim is proper only when a claim is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit so as not to involve a federal controversy." *Primax Recoveries*, 433 F.3d at 519 (citing *Steel Co.*, 533 U.S. at 89).

In the instant case, Plaintiff makes at least a colorable claim that he was an "employee," and therefore an ERISA "participant," at the time of his disability. His claim is not so insubstantial that it fails to present a federal controversy. *Steel Co.*, 533 U.S. at 89. Moreover, a factual determination on the merits that Plaintiff's status was not actually that of an employee does not strip the federal courts of jurisdiction over the case. Rather, under the rules of *Bell v. Hood* and *Steel Co.*, we may properly reach the merits of Plaintiff's case and retain jurisdiction to make an appropriate award of attorneys fees' as envisioned by Congress when crafting the ERISA scheme.

> 3.      *The District Court Did Not Abuse its Discretion in Awarding Attorneys' Fees and Costs*

Plaintiff argues that the district court abused its discretion in awarding Defendants a portion of their attorneys' fees and costs.

Courts in this Circuit consider five factors in deciding ERISA attorneys' fees questions:

(1)      the degree of the opposing party's culpability or bad faith;

(2)      the opposing party's ability to satisfy an award of attorneys' fees;

(3)      the deterrent effect of an award on other persons under similar circumstances;

(4)      whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and

(5)      the relative merits of the parties' positions.

*King*, 775 F.2d at 669. The district court addressed each of these factors in turn. The district court found, first and foremost, that Plaintiff did not litigate in good faith. While Plaintiff presented a colorable claim for benefits, Plaintiff asserted a number of "near frivolous" claims against both Defendants, Plaintiff refused to dismiss claims against one Defendant or another once it became clear which was the proper Defendant for that claim, and Plaintiff unnecessarily prolonged litigation by filing unreliable briefs and pursuing arguments even after their rejection by the court. In addition, the district court found that Plaintiff "improperly took quotations out of context and made strained arguments based upon such misinterpreted citations." (J.A. at 2548.)

We find that the district court's conclusions are supported by the record. For example, after the parties agreed that MTA was the plan administrator while Lafayette was the claims administrator, Plaintiff refused to dismiss his claim for benefits against MTA and refused to dismiss his claim for failure to turn over plan documents against Lafayette. The case law is very clear about who is a proper party defendant for each of these claims. The district court need not determine that the entire matter was pursued in bad faith to find some level of culpability on the part of Plaintiff for the unnecessary scope of litigation.

Plaintiff further argues that the district court had insufficient basis to reach a conclusion that Plaintiff could afford to pay the imposed attorneys' fees. The district court based its conclusion on

the fact that Plaintiff had reported approximately half a million dollars in income in 1998 and 1999. Plaintiff presented no evidence to the district court, and indeed presents no evidence to this Court, in support of his contention that he cannot pay the fees.

Plaintiff next argues that the district court is improperly deterring colorable claims for benefits by awarding partial attorneys' fees against Plaintiff. Plaintiff's argument is without merit. While there is no presumption of award of attorneys' fees to the prevailing party in an ERISA action, *see Schwartz v. Gregori*, 160 F.3d 1116, 1119-20 (6th Cir. 1998), the district court's objective was not to deter plaintiffs from bringing colorable claims for benefits, but from unnecessarily expanding the scope and complexity of litigation. Finally, the district court considered that the fourth *King* factor was inapplicable, and that the fifth factor favored Defendants because many of Plaintiff's subclaims were either duplicative or lacked merit.

This Court is not left with a "definite and firm conviction that the district court made a clear error of judgment." We have reviewed Plaintiff's briefs to the district court and agree with the district court that the briefs were relatively unreliable, an unreliability that continued in Plaintiff's briefs to this Court. In addition, Plaintiff continued to pursue claims against both Lafayette and MTA when the record had become clear that one or the other was not a proper defendant for some of Plaintiff's subclaims, despite the communication of relevant and clear legal authority for the dismissal of one defendant or the other to Plaintiff's counsel. The district court did not abuse its discretion in awarding attorney fees' against Plaintiff.

### 4.      *The District Court Did Not Abuse its Discretion in Sanctioning Plaintiff's Attorney*

Plaintiff argues that the district court abused its discretion in holding Plaintiff's attorney jointly and severally liable with Plaintiff to pay 50 percent of Defendant's attorneys' fees. The district court rendered its decision for MTA's fees under both Rule 11 and 28 U.S.C. § 1927 authority. The district court rendered its decision for Lafayette's fees under its 28 U.S.C. § 1927 authority. While Rule 11 and § 1927 are alternative sanctioning schemes, each possesses its own requirements. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991) (finding that § 1927, Rule 11, and a court's inherent power to impose sanctions exist in concert). This Court may affirm the district court's imposition of sanctions, however, if we find counsel's conduct sanctionable under either Rule 11 or § 1927, because we may affirm the district court on any grounds supported by the record. *City Mgmt. Corp.*, 43 F.3d at 251; *see also Ridder v. City of Springfield*, 109 F.3d 288, 299 (6th Cir. 1997) (affirming award of attorneys' fees pursuant to § 1927 when award under Rule 11 was improper).

### a.      *Sanctions were untimely under Rule 11*

Under the revised Rule 11, sanctions under Rule 11 are only appropriate when a party is made aware of the offending document as filed with the court and has an opportunity to withdraw the filing. Fed. R. Civ. Proc. 11 advisory comm. notes (1993 amendments) ("[A] party cannot delay serving its Rule 11 motion until conclusion of the case . . . .") This Court held as much in *Ridder*, 109 F.3d at 295 ("A party must now serve a Rule 11 motion on the allegedly offending party at least twenty-one days prior to the conclusion of the case or judicial rejection of the offending contention."). The parties do not dispute that the Rule 11 motions were made after the disposition of the case on summary judgment. Therefore any sanction under Rule 11 constitutes an abuse of discretion. We find, however, that the district court's sanctions were proper under its alternative § 1927 holding. *See infra*.

   b. *The district court did not abuse its discretion in imposing sanctions under § 1927*

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  This Court has held that:

> the question under 28 U.S.C. § 1927 is whether Plaintiff's attorney "multiplie[d] the proceedings . . . unreasonably and vexatiously."  An affirmative answer to that question does not require a finding of recklessness, subjective bad faith, or conscious impropriety; an attorney does not have carte blanche to burden the federal courts by pursuing claims that he should know are frivolous (see *Jones v. Continental Corp.*, 789 F.2d 1225 (6th Cir. 1986)) . . . .

*Haynie v. Ross Gear Div. of TRW*, 799 F.2d 237, 243 (6th Cir. 1986).

  Our inquiry, therefore, is whether there is support in the record that Plaintiff's attorney "multiplie[d] the proceedings . . . unreasonably and vexatiously." The district court's sanction against Plaintiff's counsel is supported by the court's finding of bad faith supporting the award of attorneys' fees against Plaintiff. *See supra*.  The district court specifically found that "Plaintiff's counsel's litigation tactics, mischaracterizations, and relentless pursuit of untenable claims and positions satisfies § 1927." (J.A. at 2557.)  A court may hold a party's attorney jointly and severally liable for the opposition's attorneys' fees as a 28 U.S.C. § 1927 sanction. *See N. Trust Co. v. Muller,* 616 F. Supp. 788, 789 (N.D. Ill. 1985).  This Court is not left with a "definite and firm conviction that the district court made a clear error of judgment."

   5. *The Size of the Attorneys' Fee Award Was Reasonable*

  Plaintiff argues in the alternative that the size of the district court's award of fees was unreasonable. MTA submitted monthly invoices with hourly accountings accompanied by attorney hourly rate charges.  MTA's total amount requested was approximately $166,000. The district court found these charges reasonable.  Lafayette, however, submitted only a total amount and an accompanying affidavit attesting to the amount's reasonableness. Lafayette requested a total amount of about $75,000.  The district court likewise found this amount reasonable.  Concluding that Plaintiff and Plaintiff's counsel unnecessarily expanded the scope and complexity of the ERISA action by approximately 50 percent, the district court ordered Plaintiff and Plaintiff's counsel held jointly and severally liable for 50 percent of both MTA's and Lafayette's submitted fees.

  Plaintiff points to no portion of the bill submitted by MTA which Plaintiff avers represents an unreasonable charge. Rather, Plaintiff argues only that the district court failed to give the matter "careful analysis" and make "discrete findings" as required for a § 1927 sanction. We disagree. The district court held counsel jointly responsible for the same conduct which underpinned the court's award of attorneys' fees against Plaintiff, conduct which the district court referenced in the

memorandum of opinion accompanying the order awarding fees.[6]  We therefore find the district court's award of 50 percent of Lafayette and MTA's attorneys' fees a reasonable award, pursuant to the district court's factual findings that Plaintiff and Plaintiff's counsel unreasonably multiplied the litigation by the same amount.  We believe the district court's findings satisfied this Court's instructions that trial courts provide "clear and concise explanation[s] of [their] reasons" for awarding attorneys' fees.  *Gettings v. Bldg. Laborers Local 310*, 349 F.3d 300, 310 (6th Cir. 2003).

Plaintiff further argues, in a perfunctory way, that the district court erred in awarding fees to Lafayette when Lafayette had yet to submit detailed hourly charges constituting a breakdown of its fees.[7]   Plaintiff argues only that such documentation would be a "logical prerequisite to establishing 'reasonableness'" under § 1927.  (Pl. Br. 67.)  Plaintiff fails to support this statement with any case law, and further fails to cite to any relevant legal authority which requires this Court to overturn a district court's award of attorneys' fees in the absence of an hourly bill. Plaintiff's one sentence argument to this effect is therefore insufficient to preserve this argument on appeal.  "[The courts of appeals] are not self-directed boards of legal inquiry and research, but essentially arbiters of legal questions presented and argued by the parties."  *See Cruz v. Am. Airlines, Inc.*, 356 F.3d 320, 333-34 (D.C. Cir. 2004); *Indeck Energy Servs., Inc. v. Consumers Energy Co.*, 250 F.3d 972, 979 (6th Cir. 2000) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation and citation omitted)); *see also Re/Max North Central, Inc. v. Cook*, 64 Fed. App'x 562, 565 (7th Cir. 2003) (finding party's arguments as to attorneys' fees waived for lack of development on appeal); *cf. Taubenfeld v. Aon Corp.*, 415 F.3d 597, 600 (7th Cir. 2005) (applying waiver analysis to party's allegations of lower court error in the award of attorneys' fees); *Griggs v. E. I. DuPont de Nemours & Co.*, 385 F.3d 440, 454 (4th Cir. 2004) (same).  Plaintiff's perfunctory argument and failure to elucidate relevant case law therefore amounts to a waiver of this argument on appeal.

*6.     The District Court Did Not Abuse its Discretion in the Amount of Fees Awarded to Lafayette*

Lafayette cross-appeals the district court's award of its attorneys' fees as too low.  Inasmuch as the amount awarded by the district court was premised on the amount submitted by Lafayette, and the fact the Plaintiff's claim for benefits was at least colorable as against Lafayette, we find that this cross-appeal is without merit.

### III.

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the decision of the district court in all respects.

---

[6]The district court found, first and foremost, that Plaintiff did not litigate in good faith.  While Plaintiff presented a colorable claim for benefits, Plaintiff asserted a number of "near frivolous" claims against both Defendants, Plaintiff refused to dismiss claims against one Defendant or another once it became clear which was the proper Defendant for that claim (e.g., the claim for failure to provide plan documentation upon request), and Plaintiff unnecessarily prolonged litigation by filing unreliable briefs and pursuing arguments even after their rejection by the court.  In addition, the district court found that Plaintiff "improperly took quotations out of context and made strained arguments based upon such misinterpreted citations." (J.A. at 2548.)

[7]While normally a party seeking attorneys' fees under ERISA should submit detailed hourly billing statements, *see Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000), Plaintiff's failure to present proper argument to this Court makes it unnecessary for us to reach this issue here.

---

**CONCURRENCE**

---

OLIVER, District Judge, concurring. I join Judge Clay's opinion affirming the decision of the district court, except in regard to Section II.A.3, which discusses Plaintiff's promissory estoppel claim. I write separately because, unlike Judge Clay, I would affirm the trial court's dismissal of the promissory estoppel claim on the same ground the trial court relied upon: failure to state a claim upon which relief could be granted. Before the trial court, Plaintiff based his promissory estoppel claim on his reliance upon Defendants' representations and on the fact that the insurance policies in issue were not plan documents. Even though Plaintiff had copies of, and was intimately familiar with, the insurance policies, he did not argue, as he argues before this court, that the term "employee" as used in the plans, was ambiguous. The trial court found that the LTD and STD policies were plan documents. *See Musto v. Am. Gen. Corp.*, 861 F.2d 897, 901 (6th Cir. 1988). The trial court further found that under *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (*en banc*), where written plan documents exist, a promissory estoppel claim cannot succeed unless the plan documents are ambiguous. *Id.* Because Plaintiff did not argue there was ambiguity in the plan documents, the court dismissed his estoppel claim.

At the trial court, Plaintiff wholly failed to raise any alternative argument that the plan documents were ambiguous, even in the face of briefing on *Sprague* by Defendants and strong suggestions from the court at the oral hearing on the motion that the insurance policies were plan documents. Plaintiff even filed a supplemental brief after oral argument, and before the court issued its order addressing whether legally sufficient plan documents existed, but that brief also failed to raise an alternative argument on ambiguity. Moreover, after the court ruled that the insurance policies constituted plan documents and dismissed the promissory estoppel claim, Plaintiff filed a motion for reconsideration regarding other issues which were addressed in the court's order, but did not challenge the court's finding that the policies were plan documents or raise an alternative argument on ambiguity. Thus, Plaintiff had ample reason and opportunity to raise this argument throughout the district court proceedings, but did not. Since Moore never raised an argument about ambiguity below, he may not do so now. *See United States v. Ninety-Three Firearms*, 330 F.3d 414, 424 (6th Cir. 2003) (holding that "[t]his court has repeatedly held that it will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice.").

I would not reach the merits of the claim, as Judge Clay does in his opinion. The issues he addresses were not squarely before the district court, and thus, there was no incentive for the lawyers to focus their arguments on the evidence or law bearing on those issues.

---

### CONCURRING IN PART, DISSENTING IN PART

---

COOK, Circuit Judge, concurring in part and dissenting in part.  Though I agree with much of the lead opinion, I respectfully differ on two points.  First, I join Judge Oliver's concurrence dismissing Moore's promissory estoppel claim on the grounds employed by the district court.  Second, the determination that Moore is not a common-law employee (and thus not a "participant") leads me to conclude that Moore lacked statutory standing, and accordingly that the district court lacked jurisdiction over the merits of certain of his ERISA claims, including fees and costs.

### I. Effect of Concluding that Moore Was not a Common-Law Employee

I agree with the majority's application of the multi-factor test of employment in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992), to conclude that Moore was not a common-law employee.  But given this conclusion, I cannot agree that the district court retained jurisdiction over Moore's ERISA claims.

ERISA empowers a "participant or beneficiary" to bring a civil action "to recover benefits due to him" or "for relief [from an administrator's refusal to supply requested information]," 29 U.S.C. § 1132(a)(1)(B), and empowers a "participant, beneficiary or fiduciary" to bring a civil action "to obtain other appropriate equitable relief."  29 U.S.C. § 1132(a)(3).  ERISA also provides that "[i]n any action . . . by a participant, beneficiary or fiduciary, the court in its discretion may allow a reasonable attorney's fees and costs of action to either party."  29 U.S.C. § 1132(g)(1).  No party argues that Moore is a "beneficiary" or "fiduciary" so we examine "participant" status.

ERISA defines "participant" to include "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan," 29 U.S.C. § 1002(7), and defines "employee" as "any individual employed by an employer."  29 U.S.C. § 1002(6).  To help clarify these definitions, the Supreme Court, in *Nationwide*, 503 U.S. at 323-24, adopted the common-law test of employment for determining who qualifies as an "employee" under ERISA.  Because Moore is not a common-law employee, he also is not an "employee" for purposes of ERISA and, by definition, not a "participant."

Statutory standing—the issue of whether a statute "authorizes [a] plaintiff to sue"—is a jurisdictional matter deserving of threshold judicial inquiry.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 92 (1998).  This court confirmed in *Ward v. Alternative Health Delivery Sys., Inc.*, 261 F.3d 624 (6th Cir. 2001), that whether a person is a "participant" or "beneficiary" under ERISA is a matter of statutory standing.  The plaintiff in *Ward* was a member of a network of health care providers who, on the basis of her clients' participation in an employee plan, brought ERISA claims against the network's corresponding HMO and specialty care management company.  This court agreed with the district court that "[the] plaintiff was not an ERISA plan participant or beneficiary and, therefore, that she did not have standing to bring her ERISA claims."  *Id.* at 627.  In the context of *Ward*'s pendent state law claims, the court left no doubt as to the consequence of that determination: "[P]lantiff's ERISA standing is a jurisdictional matter.  Once the district court dismissed the only claims within its original jurisdiction for lack of subject matter jurisdiction, it did not have jurisdiction to retain plaintiff's state law claims."  *Id.*  And likewise, upon this court's finding that Moore is not a "participant," this court should hold that the district court lacked jurisdiction to adjudicate his substantive claims.

The majority distinguishes *Ward* on the ground that the plaintiff there "argued for an extension of existing law," rather than appealing to "traditional definitions"—a distinction with

which I am respectfully unfamiliar—and that therefore the court's holding constituted "a ruling of law," rather than a "factual determination." (Maj. Op. at 19.)  Ward's argument may have been weaker than Moore's, but the cases differ (if at all) by degree, not by kind, and I cannot see how the statutory language—particularly when combined with the twelve-factor *common law* test of employment—could resolve a legal question in one context and a "factual" question in a closer case. Both cases required the court to apply parallel statutory language to undisputed facts; and in each case those facts have been found to fall outside of the statutory concept.  The consequences of the inquiries should not differ.

The majority worries that holding that the district court lacked jurisdiction because Moore is not a "participant" will produce a "circular" result—presumably because it believes that such a conclusion forecloses jurisdiction over the question whether Moore was a "participant" in the first place. (Maj. Op. at 20.)  But this conflates jurisdiction over the merits with "jurisdiction" over questions of jurisdiction.  Courts are always free (and in fact are required) to determine their own jurisdiction.  And that determination has res judicata effect. *See Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment. It has long been the rule that principles of res judicata apply to jurisdictional determinations -- both subject matter and personal.") (citing *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940); *Stoll v. Gottlieb*, 305 U.S. 165 (1938)).  No circularity results because the determination that a court lacks jurisdiction over the merits of a claim does not undermine its authority to make that determination.

I am puzzled by the majority's later discussion of *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).  In the cited section of that case, the Court rejected a gloss that the Third Circuit applied to the term "participant."  The Supreme Court held that "participant[s]" consisted only of *actual* "employee[s] or former employee[s] . . . who [are] or may become eligible [for benefits]," 29 U.S.C. § 1002(7), and that a plaintiff who merely claims to be a "participant" does not fall within the statute. *Id.* at 115-18.  The Court did suggest that the phrase "may become eligible" extends the term "participant" to employees or former employees who have a "colorable claim" to *benefits*.  But it did not extend the statutory definition of "participant" to persons who have only a colorable claim to being "employees or former employees."

The discussion is puzzling because *Firestone*'s parsing of the term "participant" adds nothing to the majority's analysis,  given its previous holding (with which I fully concur) that Moore was not a "participant."  Whether a plaintiff is a "participant" differs from what consequences flow from the determination that he or she is not, and *Firestone* only implicates the first question.  We are still left to determine whether "participant" status implicates statutory standing.

*Nationwide*, in which "[t]he Supreme Court held that common law agency principles applied to determine whether the plaintiff was an 'employee'" (Maj. Op. at 21), does not suggest otherwise. The majority observes that "[t]he Court did not imply" that whether a plaintiff was a "participant" was a question of statutory standing. *Id.*  But nor did it "imply" the contrary.  And the fact that *Nationwide* was published several years before *Ward* suggests that *Nationwide* poses no barrier to the conclusion that being a "participant" implicates statutory standing.

That leaves only *Bell v. Hood*, 327 U.S. 678 (1946), which the majority reads as instructing federal courts "to assume jurisdiction when statutory standing and merits questions converge." (Maj. Op. at 21.)  But *Bell* stands for the narrower proposition that "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." 327 U.S. at 682; *see Steel Co.*, 523 U.S. at 89-90 ("[T]he absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.*, the courts' statutory or constitutional *power* to adjudicate the case." (emphasis in original)).  This is significant because the

question implicated by whether Moore is a "participant" is not whether Moore has stated a proper cause of action, but whether he is a proper plaintiff for those claims. *Cf. Steel Co.*, 523 U.S. at 92 (distinguishing questions of who may seek relief under a statute from questions regarding the scope of a statutory cause of action); *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515 (6th Cir. 2006) (characterizing the dismissal of a claim under 29 U.S.C. § 1132(a)(3) that improperly sought legal relief, rather than equitable relief, as failing to state a claim, rather than failing to support the court's jurisdiction—and where there was no dispute over whether the plaintiff was a "participant"). To see that this is so, consider that the district court dismissed Moore's fiduciary duty claim (Count II) and failure to furnish information claim (Count V) on the merits without relying on its later conclusion that he was not a "participant." Even under the majority's reading of *Bell*, the question of whether Moore was a "participant" could still be jurisdictional because the merits of such claims did not converge with statutory standing.

The same is true of Moore's claim for benefits, which the district court did resolve on the basis that Moore was not a "participant." For if the district court had found that Moore was a "participant," that would not have ended the court's inquiry. It still would have had to assess whether Moore was an employee and eligible for relief under the plan's definitions, and while that may have been straightforward in this case, it is not always so. Eligibility for relief is a distinct concept from whether a plaintiff is a "participant," thus the merits of Moore's claim for benefits do not converge with the issue of statutory standing. *Bell* does not require us to view whether Moore was a "participant" as a question on the merits.

Finally, viewing whether Moore was a "participant" as a question of statutory standing promotes the goal of judicial economy. The district court should have addressed the issue first and, upon determining that Moore was not a "participant," dismissed all of Moore's ERISA claims—for benefits, breach of fiduciary duty, attorneys' fees, and failure to supply information—that stemmed from conduct occurring after he signed the CSA.

## II. Fees

Just as the district court lacked jurisdiction to consider the merits of Moore's ERISA claims, so too it lacked jurisdiction to award attorneys' fees under ERISA. Section 1132(g)(1) only allows a court to award fees and costs in actions "by a participant, beneficiary, or fiduciary." Because Moore was none of the above, the district court did not have jurisdiction over Moore's Count IV (seeking such fees), or over the defendants' motion for fees under ERISA. I would thus vacate the district court's award of fees against Moore.

Because the district court held Moore's counsel jointly and severally liable with Moore for the § 1132(g) penalty, a holding that the court was without jurisdiction to award fees under ERISA would seem to remove the only basis for that sanction. However, because the district court suggested an independent basis for Moore's counsel's liability, I would remand the question of whether sanctions were appropriate under 28 U.S.C. § 1927 (given the majority's conclusion that defendants' Rule 11 motion was untimely). I would also remand the question of whether Moore himself was similarly liable on a non-ERISA basis.